**Robert P. LUBIN, Plaintiff,**

**v.**

**SYBEDON CORPORATION, et al., Defendants.**

**Civ. No. 87–1844–E(IEG).**

United States District Court, S.D. California.

June 22, 1988.

Michael J. Aquirre, Patricia A. Meyer, Michael McCabe, Law Offices of Michael J. Aquirre, Allan J. Reniche, James C. Krause, Reniche & Krause, and Terry J. Knoepp, Worley, Schwartz, Garfield & Rice, San Diego, Cal., for plaintiff.

John H. L'Estrange, William Nevitt, Wright & L'Estrange, San Diego, Cal., for Sybedon Corp., Sybedon Equities Corp., Edwin J. Glickman, Bertram Lewis, Arthur Fefferman, Donald M. Flaks, Mitchell Davis, Evan Graf and Dean Levitt.

Donald M. Wessling, Eugene Hanson, O'Melveny & Myers, Los Angeles, Cal., for Prudential–Bache Properties, Inc. and Prudential–Bache Securities, Inc.

Donald McGrath II, John Hershberger, Macdonald, Halsted & Laybourne, San Diego, Cal., for Christopher D. Sickels, CDS–Grant Associates, CDS–Grant Corp., CDS Management Co., Inc., CDS Lodging Properties, Inc. and Ulysses Management Co.

Michael D. Dempsey, Joel Schiff, Shea & Gould, Los Angeles, Cal., for Pannell Kerr Forster.

Peter Benzian, Mark W. Smith, Latham & Watkins, San Diego, Cal., for Laventhol & Horwath.

Michael Weaver, Timothy Taylor, Sheppard, Mullin, Richter & Hampton, San Diego, Cal., for Home Federal Sav. & Loan.

Morton Rosen, Haight, Brown & Bonesteel, Santa Monica, Cal., for Hill Financial Sav. & Loan.

Kinkle, Rodiger & Spriggs, San Diego, Cal., agent for Wilrock Appraisal & Consulting, Inc.

R. Gaylord Smith, Patrick E. Mundy, Lewis, D'Amato, Brisbois & Bissgard, San Diego, Cal., Robert J. Perry, Brown & Wood, New York City, agent for National Union & Fire Ins. Co. of Pittsburgh.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### INTRODUCTION

This is a proposed class action for damages, injunctive relief, rescission, attorneys' fees and other relief brought by investor Robert Lubin against a wide array of defendants who were involved in the restoration of the U.S. Grant Hotel (hereinafter "Hotel") in San Diego. Lubin alleges generally that through material misstatements and omissions defendants fraudulently exaggerated the prospects for the Hotel's success and at the same time failed to disclose the severe financial straits into which the restoration project was falling. Various defendants now move to dismiss this action and to strike portions of the First Amended Complaint. In addition, Lubin has moved to certify a class of plaintiffs, and a group of investors has moved to intervene as representative plaintiffs.

The defendants in this case are the following individuals and entities:

1. Sybedon Corporation ("Sybedon")—the general partner of U.S. Grant Hotel Associates, Ltd. ("Grant Associates"); co-issuer of the limited partnership interests purchased by investors such as Lubin;

2. Sybedon Equities—the broker-dealer; marketed the limited partnership interests in Grant Associates;

3. Prudential-Bache Securities—the underwriter-broker; also marketed the securities;

4. Prudential-Bache Properties (together with # 3 referred to as "Prudential-Bache")—the property manager; purportedly the sole "Class B" limited partner of Grant Associ-

ates (although Lubin alleges it to be a general partner);

5. Chris D. Sickels—the developer and general partner of CDS-Grant Associates;

6. CDS-Grant Associates—a California general partnership, with Sickels and CDS-Grant Corporation as general partners; sold the Hotel to the Grant Associates;

7. CDS-Grant Corporation—a California corporation; general partner of CDS-Grant Associates;

8. Ulysses Management Company—a limited partnership which leased the Hotel from the Grant Associates; has been voluntarily dismissed from this suit;

9. CDS-Grant Management Company—an affiliate of Sickels; managed some commercial aspects of the Hotel;

10. CDS Lodging Properties—the general partner of Ulysses Management Company and an affiliate of Sickels (Note—defendants 5-7, 9, and 10 are referred to as "Sickels and the CDS-Grant defendants");

11. Pannell, Kerr & Forster ("Pannell")—the accountants who prepared projections for the Hotel;

12. Wilrock Appraisal & Consulting, Inc. ("Wilrock")—the appraiser of the Hotel;

13. Laventhol & Horwath ("Laventhol")—the accountants for the Grant Associates;

14. Proskauer, Rose, Goetz & Mendelsohn ("Proskauer")—the lawyers for Sybedon and the Grant Associates; drafted the private placement memorandum;

15. Edwin Glickman—Executive vice-president and director of Sybedon;

16. Bertram Lewis—Chairman and director of Sybedon;

17. Arthur Fefferman—Senior vice-president, secretary and director of Sybedon;

18. Donald Flaks—President and director of Sybedon;
19. Mitchell Davis—Senior vice-president and director of Sybedon;
20. Evan Graf—alleged controller of Sybedon and Sybedon Equities;
21. Dean Levitt—alleged controller of Sybedon and Sybedon Equities (Note—defendants 1, 2, and 15–21 are referred to as the "Sybedon defendants");
22. National Union Fire Insurance ("National Union")—the corporate surety;
23. Home Federal Savings and Loan ("Home Federal")—a federally chartered savings and loan; alleged co-issuer of the limited partnerships;
24. Hill Financial Savings and Loan ("Hill Financial")—a Pennsylvania savings and loan; made investor loan note to the Grant Associates;
25. Nationwide Lending ("Nationwide") —originally named as "Doe 1").

Lubin has also added Does 2–250 as defendants.

## FACTUAL BACKGROUND

This action arises out of the sale of approximately $43 million of "Class A" limited partnership interests, which were issued in order to raise capital for renovation of the Hotel. The interests were in the California limited partnership, U.S. Grant Hotel Associates, Ltd. ("Grant Associates"), and were offered nationally by defendant Prudential–Bache Securities from January through April, 1985. Three hundred limited partnership units were each sold for approximately $143,000, in principal and interest.

The sale of the limited partnerships was part of a massive renovation effort spearheaded by defendant Sickels. In July 1979, Sickels acquired a long-term lease on the Hotel; he also acquired an option to purchase the Hotel upon the death of then-owner Joseph Drown. On April 4, 1980, Sickels closed the Hotel for refurbishing. In July 1983, Sickels acquired the Hotel for $8.5 million, $6 of which was designated as

a payoff on the long-term lease which had been taken out in July 1979. Roughly $5 million of the purchase price was secured by a First Deed of Trust on the Hotel, with the Drown Foundation as beneficiary.

Sometime after acquiring the lease, Sickels began to devise plans for the Hotel's renovation—plans which, according to Lubin, were revised four times during the next five years and for which the estimated cost jumped from $10 million to over $80 million. After purchasing the Hotel in July 1983 (in the name of CDS–Grant Corporation), Sickels embarked on a $33.5 million renovation plan. This plan was funded by a construction loan of $27.25 million from Home Federal and an Urban Development Action Grant of $6 million. The Home Federal Loan was secured by a Second Deed of Trust on the Hotel. The loan was subsequently increased by $4.75 million, so that the total debt to Home Federal was $32 million. Of the $6 million Action Grant, $1.2 million was borrowed from the City of San Diego, and $4.8 million was borrowed from funds administered by the United States Department of Housing and Urban Development. The Action Grant was secured by a Third Deed of Trust on the Hotel.

Lubin asserts that during the initial demolition phase of the redevelopment in August 1983, massive structural defects were discovered in the Hotel. These defects allegedly escalated the cost of renovation by some $17 million. At this time, says Lubin, Sickels decided to restructure his stake in the project by syndicating equity interests. The limited partnership that resulted was the Grant Associates. Sickels's restructuring allegedly enabled him "to enjoy the economic benefits of the hotel, while moving into a liability-free zone." Memorandum in Support of Motion for Class Certification, p. 7. On October 26, 1984, the CDS–Grant Corporation contributed the Hotel to the CDS–Grant Associates, a general partnership of Sickels and the CDS–Grant Corporation. The CDS–Grant Associates assumed the obligations under the Second Deed of Trust.

In order to raise additional capital for the Hotel's renovation, the Grant Associates limited partnership was formed on or about November 21, 1984. The single general partner of the Grant Associates was Sybedon. On December 1, 1984, Sickels and the CDS–Grant defendants agreed to sell the Hotel to the Grant Associates; the price was $58.7 million. Various real estate contracts were then concluded, under which Sickels and the CDS–Grant defendants would continue to renovate the Hotel, Ulysses Management Company would lease the Hotel from the Grant Associates, and two more deeds of trust (the Fourth and Fifth Deeds of Trust) would secure the purchase money notes which were issued in favor of the CDS–Grant Associates as part payment for the Hotel. (The Fourth Deed of Trust wrapped around the First, and the Fifth Deed of Trust wrapped around the Second.) These real estate agreements closed on December 28, 1984.

In January 1985, Sybedon and Prudential–Bache Securities commenced an offering of $30 million worth of limited partnership interests in the Grant Associates. Offerings continued through April 1985. The purchase price of each Class A unit was $100,000; with interest, the cost to investors would be $143,000. According to Lubin, neither the Hotel's renovation history nor its later cost overruns were disclosed in the documents which were drafted to solicit investors for the limited partnership. It is these omissions (and corresponding misstatements) which lie at the heart of Lubin's complaint. Three offering documents were circulated to investors: (1) the Confidential Private Placement Memorandum (prepared by Proskauer), (2) a U.S. Grant Hotel Associates Limited Partnership Agreement, and (3) the Prudential–Bache Securities U.S. Grant Hotel Brochure. According to Lubin, virtually all of the instant defendants bore some responsibility for these documents. Accordingly, they all must bear some responsibility for the damages which have been occasioned by the documents.

Lubin contends that, in the years since its purchase by the Grant Associates, the Hotel has been a financial near-disaster. Lubin alleges that the financial capacity of the Hotel has been "overwhelmed," in part because the Hotel was grossly overvalued. Lubin further alleges that certain defendants represented the value of the Hotel to be approximately $94 million, when in fact the Hotel is worth only about $33 million. In addition, the failure to maintain sufficient cash and other liquid assets has precluded the refurbished Hotel from meeting its high startup costs. The Hotel has failed to make payments on its Home Federal loans since January 1, 1987, and Home Federal has filed a judicial foreclosure action. Furthermore, the Grant Associates ceased paying property taxes in early 1987. Some trade competitors have not been repaid. Finally, on February 22, 1988, the Grant Associates formally sought the protection of the Chapter 11 bankruptcy laws (Case No. 88–01348–M11).

Lubin filed his original complaint in this action on December 23, 1988. He then filed an amended complaint on January 4, 1988. The First Amended Complaint sets out sixteen causes of action:

I. violations of sections 12(2) and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77*l* (2), 77*o* —against all defendants except Laventhol;

II. primary and secondary liability for violations of sections 10(b) and 20 of the 1934 Securities Exchange Act ("1934 Act"), 15 U.S.C. §§ 78j(b), 78t, and Rule 10b–5, 17 C.F.R. 240.10b–5—against all defendants;

III. violations of section 12(1) of the 1933 Act, 15 U.S.C. § 77*l* (1) and California Corporations Code sections 25501, 25504, 25504.1, 25504.2—against all defendants except Laventhol;

IV. violations of California Corporations Code sections 25503, 25504, 25504.1—against all defendants except Laventhol;

V. fraud and deceit, in violation of California Civil Code sections

1710(1) and 1710(3)—against all defendants;

VI. negligence, misrepresentations and omissions, in violation of California Civil Code section 1710(3) —against all defendants;

VII. breach of fiduciary duty and aiding and abetting the breach— against all defendants;

VIII. legal malpractice—against Proskauer;

IX. professional malpractice (accounting)—against Pannell;

X. professional malpractice (accounting)—against Laventhol;

XI. professional negligence (appraising)—against Wilrock;

XII. breach of contract—against all general partners or agents of limited partnership;

XIII. accounting;

XIV. unfair business practices;

XV. declaratory relief and cancellation of documents;

XVI. declaratory relief—against Home Federal only.

Further factual background will be presented as it relates to the discussion of the motions, below.

## DISCUSSION

### I.

### MOTIONS TO DISMISS

A. *First Cause of Action: Violation of Sections 12(2) and 15 of the 1933 Securities Act*

1. Statute of Limitations

Defendant Proskauer, joined by the Sybedon defendants, Home Federal and Sickels and the CDS–Grant defendants, moves the court to dismiss Lubin's first cause of action on grounds that it is barred by the statute of limitations. As mentioned above, Lubin's first cause of action is for violations of sections 12(2) and 15 of the 1933 Act, 15 U.S.C. §§ 77*l* (2) and 77o. Lubin alleges generally that the limited partnership offering materials contained material misrepresentations and omitted to state material facts.

The statute of limitations for section 12(2) claims is set out in section 13 of the 1933 Act, which provides in part that an action must be brought "within one year after the discovery of the untrue statement or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. Thus, the statute does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the facts constituting the section 12(2) violation. As the Ninth Circuit recognized in *Kramas v. Security Gas & Oil Co., Inc.*, 672 F.2d 766, 770 (9th Cir.1982), fact questions are usually involved in the determination of when and whether a plaintiff discovered the violation. *See Toombs v. Leone*, 777 F.2d 465, 468 n. 4 (9th Cir.1985) (finding that unresolved fact questions precluded disposition of the section 12(2) claim on statute of limitations grounds). At the same time, however, "reasonable diligence is tested by an objective standard, and where uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment." *Kramas*, 672 F.2d at 770. Some courts have applied the "inquiry notice" standard to determine that a plaintiff should have known of the fraudulent conduct. *See Erickson v. Kiddie*, Fed.Sec.L.Rep. ¶ 92,889, 94,312 (N.D.Cal.1986) [available on WESTLAW, 1986 WL 544].

■ Lubin bears the burden of proving compliance with the statute of limitations, and he must show with particularity the affirmative facts which demonstrate diligence. *See Toombs*, 777 F.2d at 468; *In re National Mortgage Equity Corporation Mortgage Pool Certificates Securities Litigation*, 636 F.Supp. 1138, 1169 (C.D.Cal.1986). That is, he "must plead facts demonstrating why, despite the exercise of due diligence, [he] did not discovery [sic] the misrepresentations or omissions sooner." *In re Rexplore, Inc. Securities Litigation*, 671 F.Supp. 679, 688 (N.D.Cal. 1987). The *Rexplore* court continued: "In

most circumstances only affirmative conduct of concealment by the cupable [sic] defendant which would lead a reasonable person to believe he had no claim, tolls the statute." *Id.* A passive partner in concealment may be subject to section 13's discovery rule, however, if a special relationship with the plaintiff imposes a duty to disclose or if a conspiracy exists through which the affirmative conduct of fraudulent concealment on the part of one defendant may be attributed to the others. *Id.* The *Rexplore* court cautioned that "[t]he facts demonstrating plaintiffs [sic] excusable failure to discover the claim must be pled with 'at least some particularity.'"

Lubin has chosen to invoke the "fraudulent concealment" doctrine for equitable tolling of the section 13 statute. Long ago, the Supreme Court recognized that a federal statute of limitations is equitably tolled when a plaintiff remains in ignorance of a cause of action because defendants fraudulently concealed facts material to the plaintiff's claim. *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *Rexplore,* 671 F.Supp. at 687. In order to call upon the doctrine of fraudulent concealment, a plaintiff must show "affirmative conduct" by defendants which would, in the circumstances given, lead a reasonable person to believe that he did not have a claim for relief. *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415 (9th Cir.1987). The Ninth Circuit has explained: "To invoke the doctrine in the complaint, [plaintiffs] must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts." *Id.* at 1415–16. Silence or passive conduct on the part of the defendants would not constitute fraudulent concealment, and a plaintiff's ignorance of the cause of action, without more, does not toll the statute. *Id.* at 1416.

Lubin purchased his interest in the limited partnership on or about January 17, 1985, and he did not file this suit until December 1987. The timeliness of the first cause of action thus turns upon whether Lubin has properly pleaded fraudulent concealment.

Lubin asserts that it was not until Home Federal filed its foreclosure action against the Hotel in December of 1987 that he became aware of the facts constituting the alleged section 12(2) violations. Defendants, on the other hand, propose that various quarterly reports from the partnership "frankly and candidly disclosed that operational and financial results for the Hotel were falling well below the projections which plaintiff now contends were fraudulent." Memorandum in Support of Motion to Dismiss on Statute of Limitations Grounds, p. 9. These reports, dated June 2, 1986, August 29, 1986, and December 1, 1986, should have disclosed to Lubin and others that the partnership was having troubles as early as 1986.

Before analyzing this issue, the court must first acknowledge that on this motion to dismiss the content of the quarterly reports is beside the point. The sole question before the court is whether plaintiffs have pleaded fraudulent concealment, not whether the reports adequately revealed the Hotel's troubles. The content and presumed effect of these reports is a matter to be taken up on a motion for summary judgment, at which time the parties may prove what Lubin and the other limited partners should, or should not, have known about the Hotel.

■ Upon examination of the First Amended Complaint, the court finds that Lubin has sufficiently pleaded fraudulent concealment so as to shield his first cause of action from defendants' statute of limitations attack. Although perhaps Lubin might have been more focused in his pleading of fraudulent concealment, the court finds that in the Complaint Lubin consistently alleges that defendants perpetrated a complex and ongoing scheme to cover-up the Hotel's financial difficulties. Indeed, it might not be overstating the point to say that the essence of Lubin's Complaint is precisely the same fraud which allegedly concealed defendants' primary wrongs from the limited partners. The motion to dismiss the first cause of action on statute of limitations grounds must be denied.

### 2. Failure to State a Claim

Lubin has brought his cause of action under sections 12(2) and 15 of the 1933 Act against all defendants except Laventhol. The cause of action rests upon two independent theories of liability: primary "seller" liability under section 12(2) and secondary "controlling person" liability under section 15. Defendants Sickels and the CDS–Grant defendants, Pannell, Proskauer, National Union, Home Federal and Hill Financial now move to dismiss the cause of action on grounds that it fails to state a claim upon which relief can be granted.

In ruling upon a motion to dismiss for failure to state a claim, a court must accept all material allegations in the complaint as true and must construe the implications which arise from those allegations in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Dismissal is warranted only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved. *Id.; Halet v. Wend Investment Co.,* 672 F.2d 1305, 1309 (9th Cir.1982).

Section 12(2) of the 1933 Act, as codified at 15 U.S.C. § 77*l* (2), provides in part that any person who:

> (2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any

income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Although this statute appears to apply strictly to "offerors" and "sellers" of securities, the Ninth Circuit recognizes a subsidiary doctrine of "participant" liability, under which a person may be liable as a seller even if he or she did not in fact pass title. *Jett v. Sunderman,* 840 F.2d 1487, 1491 (9th Cir.1988). A participant is liable as a seller only if his or her actions "were both necessary to and a 'substantial factor' in bringing about the sale transaction." *Id., quoting S.E.C. v. Murphy,* 626 F.2d 633, 649–50 (9th Cir.1980). The *Jett* court continued: "The test is whether the injury to the plaintiff flowed directly and proximately from the actions of the defendant." *Id., quoting S.E.C. v. Seaboard Corp.,* 677 F.2d 1289, 1294 (9th Cir.1982).[1] Acts which have been considered to be relevant to the issue of participant liability include: "(1) devising the issuer's corporate financing scheme, (2) preparing or reviewing offering memoranda, (3) meeting personally with broker-dealers or investors, and (4) participating in promotional seminars or sales meetings." *Id.*

Section 15 of the 1933 Act, as codified at 15 U.S.C. § 77*o,* provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

The Ninth Circuit recently clarified the standard for controlling person liability in

---

**1.** Note: This case is also commonly known as *Admiralty Fund v. Hugh Johnson & Company,* *Inc.*

*Buhler v. Audio Leasing Corp.,* 807 F.2d 833, 835 (9th Cir.1987), where the court stated: "To establish that a defendant is a controlling person, a plaintiff must show that: (1) the defendant had actual power or influence over the alleged controlled person, and (2) the defendant was a culpable participant in the alleged illegal activity." The court did not provide further guidance on how to apply the "power or influence" aspect of this test, however, and the circuit still lacks a workable standard for this aspect. *See Kersh v. General Council of Assemblies of God,* 804 F.2d 546, 548 (9th Cir.1986). The court in *Buhler* added that "[w]hether a defendant has power or influence over an allegedly controlled person is a question of fact." *Id.*

Lubin has asserted primary ("seller"/"participant") and secondary ("controlling person") theories of liability against each of the defendants which has been named in this first cause of action. Both theories will be discussed for each defendant.

### a. *The Sybedon Defendants*

■ The Sybedon defendants have not formally moved to dismiss the first cause of action for failure to state a claim. And it appears that such a motion would have been unavailing in any event, given that a corporate general partner (together with its officers and directors) typically may be held liable on either a primary or secondary theory of liability. *See, e.g., Koehler v. Pulvers,* 614 F.Supp. 829, 843 (S.D.Cal. 1985).

### b. *Prudential–Bache*

■ The two Prudential–Bache defendants, Prudential–Bache Securities and Prudential–Bache Properties, have moved to dismiss Lubin's section 12(2) claim primarily upon grounds that the claim has not been pleaded with particularity, as required by Federal Rule of Civil Procedure 9(b) (see discussion below). The court now finds that Lubin has properly alleged a section 12(2) cause of action against Prudential–Bache Securities, but has not alleged a

proper cause of action against Prudential–Bache Properties.

Paragraphs 14 and 15 of the Amended Complaint set out the identities of the Prudential–Bache defendants, and specific allegations are mounted in paragraphs 60–63. Prudential–Bache Securities is alleged to have been the underwriter and broker/dealer for the offering of the Grant Associates limited partnerships. Through its Direct Investment Group, Prudential–Bache Securities allegedly marketed the limited partnerships throughout the United States. Because Lubin has alleged that Prudential–Bache Securities was the direct, hands-on seller of the limited partnerships, his allegations suffice to state a claim against Prudential–Bache Securities for seller liability.

■ Prudential–Bache Properties, on the other hand, is alleged to have been a property manager and *de facto* controller of the partnership. *See* First Amended Complaint, ¶ 61.[2] Lubin further contends that Prudential–Bache Properties, while in fact acting as a general partner, was designated a "Class B" limited partner in order to avoid liability. *Id.* Without more, these allegations do not make out a cause of action for either seller liability or controlling person liability. Lubin's first cause of action against Prudential–Bache Properties must be dismissed for failure to state a claim upon which relief may be granted.

### c. *Sickels and the CDS–Grant Defendants*

■ Sickels and the CDS–Grant defendants also move to dismiss the first cause of action on grounds that Lubin has failed to state a claim. In paragraphs 43–56 of the First Amended Complaint, Lubin sets out both the "Development History" of the Hotel and the "Primary Wrong" underlying this lawsuit. It is in these paragraphs that Lubin advances his allegation that Sickels improperly maneuvered into a position in which he would enjoy the financial benefits of the Hotel's redevelopment while at the same time evading its risks.

**2.** Subsequent citations to the First Amended Complaint will be by ¶ marker only.

The court now finds that Lubin's somewhat unfocused allegations, when viewed in their most favorable light, do satisfy the pleading requirement for a cause of action under the "participant" liability aspect of section 12(2)'s "seller" prong.[3] The court finds that Lubin has alleged that Sickels and the CDS–Grant defendants were both necessary to, and a substantial factor in bringing about, the sale of the limited partnership interests. Therefore, notwithstanding their transfer of the Hotel's ownership in December 1984, Sickels and the CDS–Grant defendants were alleged to be participants in the sale of the limited partnerships. Lubin alleges—unmistakably, although perhaps not transparently—that his injuries followed directly and proximately from the restructuring maneuverings of Sickels and the CDS–Grant defendants. Therefore, even if Sickels neither met with potential investors nor spoke at sales seminars, he did (allegedly) devise the sales scheme and he did assist in the preparation of the offering materials. The court is well aware that Sickels has challenged the truth of these allegations. But, as mentioned above, the court may not now inquire into the merit of these allegations; the sufficiency of their pleading is the court's single concern. And the court now finds that Lubin's allegations of participant liability are sufficient to sustain his first cause of action against Sickels and the CDS–Grant defendants.

#### d. *Pannell*

■ Pannell is mentioned only sparingly in the First Amended Complaint. Paragraph 21 simply identifies the defendant as a partnership of accountants. Paragraph 48 alleges that Pannell advised Sickels on his decision to syndicate equity interests in order to raise funds for the Hotel's renovation, and paragraph 49 groups Pannell with multiple other defendants as having "worked on and prepared" the offering documents. Paragraph 54 alleges that Pannell prepared market and income forecasts which unduly suggested that the Hotel would be able to cover its debt.

---

3. Because the court sustains the cause of action on "seller"/"participant" grounds, there is no

The court finds that the First Amended Complaint does not state a claim against Pannell for a violation of section 12(2). Lubin has not made out a claim for "seller" or "participant" liability because he has not alleged that Pannell was both necessary to, and a substantial factor in bringing about, the sale of limited partnerships. Moreover, in no sense has Lubin alleged that his injury flowed directly and proximately from any wrongdoing by Pannell. In fact, apart from making indiscriminate statements about the concerted actions of "defendants and each of them," Lubin has alleged no more than that Pannell prepared accounting forecasts that were later used by Sybedon and others in demonstrating the bright prospects for the Hotel. This is certainly not "seller" activity under section 12(2). Neither is it "participant" activity.

Furthermore, the court finds that Lubin has not alleged "controlling person" liability on the part of Pannell. Indeed, nowhere does Lubin even suggest that Pannell wielded actual power or influence over Sybedon, Sickels or any other defendants. Similarly tenuous is Lubin's assertion that he alleged culpable participation. The First Amended Complaint is almost entirely devoid of indications of controlling person liability on the part of Pannell. Lubin's first cause of action against Pannell must be dismissed.

#### e. *Wilrock*

Wilrock, the appraiser retained by Sybedon, has joined in all of the motions of its codefendants. And even though Wilrock thus has never articulated its own argument for dismissal of Lubin's section 12(2) claim, the court finds that the claim must be dismissed. The references to Wilrock in the First Amended Complaint are even less substantial than the references to Pannell. And given that these two defendants appear to have been similarly situated in the alleged fraud scheme, dismissal of the claim against Wilrock is appropriate for the

---

need to discuss the controlling person theory.

same reasons that dismissal of the claim against Pannell is appropriate.

### f. *Proskauer*

█ The first Amended Complaint alleges that Proskauer provided legal services to the Grant Associates and also drafted the Confidential Private Placement Memorandum which was used by defendants in their fraud. ¶¶ 26, 27, 49. The First Amended Complaint further alleges that Proskauer advised Sickels to syndicate equity interests in the Hotel. ¶ 48. Paragraph 54 alleges that Proskauer "organized, designed and structured the prospectus delivered to plaintiffs with omissions and misstatements of material facts." Paragraphs 91 through 95 describe the alleged omissions and misstatements (without apportioning fault for their inaccuracy). On the basis of these allegations, Lubin argues that Proskauer should be held liable for a violation of section 12(2).

The court disagrees. First, the court finds that Lubin has not alleged that Proskauer was a "seller" or "participant" in the sale. Again, the court must emphasize that clear and current Ninth Circuit law requires a plaintiff to show participation that was both "necessary" to, and a "substantial factor" in, bringing about the wrongdoing. It is insufficient to simply posit participant status, without showing that injuries flowed directly and proximately from the alleged participation. Lubin has not met these pleading requirements.

Lubin has pointed to several cases in which courts upheld theories of participant liability on the part of attorneys. *See Seaboard Corp., supra; Koehler, supra; National Mortgage Equity, supra.* Indeed, however, the court does not quarrel with the proposition that, in some circumstances, attorneys may be held liable as "sellers" under section 12(2). What is lacking in the instant case is a showing by Lubin that *these* circumstances might warrant a finding of Proskauer's liability. This case thus appears to be readily distinguishable from those in which attorneys were held liable as participants. In *Seaboard Corp.,* for example, the attorney had participated actively throughout all stages of negotiating the sale of securities. In *National Mortgage Equity,* the attorney defendant was an officer and part owner of the issuer, and was involved in its operations "from the very beginning." 636 F.Supp. at 1168. And in *Koehler,* the attorney had actively promoted the sales of securities, and was the "principal architect" of a dummy brokerage agreement.

The recent decision of the Oregon District Court in *Parquitex Partners v. Registered Financial Planning Services, Inc.,* [1987] Fed.Sec.L.Rep. ¶ 93,255 at 96,226 (D.Ore.1987) [available on WESTLAW, 1987 WL 15459], reaffirms that attorney liability under section 12(2) may be found only upon an examination of all relevant circumstances. In *Parquitex,* the plaintiffs had sued two attorneys, both of whom were on the advisory board of the defendant financial planning corporation. The court carefully distinguished the attorneys' roles, and found that the plaintiffs had stated a section 12(2) claim against the attorney who played a "direct role" in the sales to plaintiffs, but had not stated a claim against the attorney who was alleged merely to have investigated the investment. The court stated: "The fact that he prepared the investment documents, while necessary to the completion of the transaction, did not falsely induce plaintiffs to invest." *Id.* Similarly, here Lubin has not stated a claim for seller liability.

For like reasons, the court finds that Lubin has not stated a claim for "controlling person" liability. Although Lubin might have alleged "culpable participation" (if one allows that term a great breadth), Lubin has not alleged that Proskauer exercised power or influence over the other defendants in this action. Therefore, Lubin has not stated a claim for controlling person liability against Proskauer.

### g. *National Union*

█ There appears to be only one substantive and particularized allegation against National Union in the First Amended Complaint:

Defendant NATIONAL UNION prepared a surety bond purporting to guarantee 7-year promissory notes executed

by plaintiffs, and the notes were discounted and purportedly sold to Defendant HILL FINANCIAL which in turn advanced "short term loan" funds to SICKELS, HOME FEDERAL, and other of the defendants. Defendants used the surety device and assignment of the promissory notes to induce investors to make a substantial financial commitment in addition to their initial cash investment.

¶ 54. The First Amended Complaint does not otherwise allege that National Union took any part in the preparation or sale of the limited partnerships.

This allegation is clearly insufficient to support a claim under section 12(2). Lubin has not shown that National Union was either necessary to, or a substantial factor in, the sale. Participant liability is therefore precluded. And controlling person liability has not been alleged because Lubin has made no showing of culpable participation in the alleged illegal acts.

### h. *Home Federal*

The allegations of wrongful conduct on the part of Home Federal are significantly more substantial and direct than the allegations against the other lending and securing defendants, and accordingly the court must deny Home Federal's motion to dismiss Lubin's section 12(2) claim. Paragraph 46 of the First Amended Complaint mentions that Home Federal lent the first $27 million of credit to Sickels at the outset of the renovation plan. Paragraph 52 alleges that through its status as primary lender, "[f]rom July 1983 forward, HOME FEDERAL controlled the U.S. Grant Hotel and Christopher Sickels." Paragraph 53 further contends that Home Federal entered into an "agreement" with Sickels to "raise funds from investors to enhance the value of their respective positions in the U.S. Grant Hotel." This agreement led to the syndication scheme that eventually produced the limited partnerships purchased by Lubin and others. Paragraph 54 alleges that Home Federal

knew of the contents of the offering circular and of the misstatements and omissions which it contained. Paragraph 55 indirectly alleges that Home Federal attempted to avoid liability for its complicity by wrongly holding itself out as a construction lender only. According to Lubin, Home Federal was much more than this from the outset.[4]

Home Federal proposes that these allegations are insufficient to make out a section 12(2) claim. Home Federal first argues that Lubin has not alleged facts showing participant liability as a seller. The First Amended Complaint does not allege that Home Federal was involved in the actual sales of the securities. Neither does the Complaint allege that Home Federal prepared the offering memorandum, met with any of the investors, met with any representatives of the general partner, or participated in promotional seminars.

Upon due consideration, however, the court finds that Lubin has at least set out the outlines of a valid claim for participant liability. And, taking the Ninth Circuit's standard at face value, this is sufficient to sustain the cause of action. That is, because Lubin has alleged that Home Federal was "necessary" to and a "substantial factor" in bringing about the syndication and sale of the limited partnerships, his claim must survive this motion. Home Federal, according to the First Amended Complaint, was much more than a disinterested lender. It was one of the driving forces behind the syndication. As such it may be liable as a participant, even if it did not directly assist the marketing and sale of the securities. *See Rexplore*, 671 F.Supp. at 686 (in which the court permitted amendment of a section 12(2) claim against a bank, where that bank was the sole lender to limited partnerships and where the bank "had a pervasive presence in the overall plan of [the] limited partnerships").

### i. *Hill Financial and Nationwide Lending*

Hill Financial and Nationwide Lending have together moved to dismiss Lubin's

---

**4.** The other allegations against Home Federal either concern the details of the loans (see ¶¶ 66–76) or are of the "lumped-together" variety, in which all of the defendants are charged equally and indiscriminately (see ¶¶ 91–95, 98, 100–101).

section 12(2) cause of action. The First Amended Complaint alleges only that Hill Financial "joined in [the syndication] scheme," "advanced 'short term loan' funds," and had "knowledge of the contents of the offering circular." ¶ 54. The first and third of these allegations are made against all of the defendants as a group, so that the only particularized allegation against Hill Financial is that it was a short-term lender.[5]

Lubin's allegations against Hill Financial are patently inadequate to state a cause of action for either seller or controlling person liability. In no sense has Lubin alleged that Hill Financial was necessary to, or a substantial factor in bringing about, the sale of limited partnerships. Even less has Lubin alleged that his injuries flowed directly and proximately from any wrongdoing on the part of Hill Financial. Similarly, Lubin has not alleged either that Hill Financial had actual power or influence over any of the instant defendants, or that it was somehow culpable in the alleged fraud. Lubin's pleading here was of a most superficial variety, and it emphatically does not support a cause of action under section 12(2).

**B.** *Second Cause of Action: Violation of Section 10(b) and Rule 10b-5*

Section 10(b) of the 1934 Act makes it unlawful "for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe...." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated in accordance with section 10(b), provides that it is unlawful for any person:

(a) To employ any device, scheme or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact ...; or

(c) To engage in any act, practice or course of business which operates as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (1981). The existence of a private civil remedy under Rule 10b-5 is beyond dispute. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975).

Lubin is proceeding in his second cause of action against each of the defendants, and he premises his claim upon three theories of Rule 10b-5 liability: 1) primary liability, 2) aiding and abetting liability, and 3) controlling person liability. (The second and third theories are commonly referred to as theories of "secondary liability.") Defendants move to dismiss on grounds of untimeliness, failure to plead with particularity and failure to state a claim.

1. Statute of Limitations

Defendant Proskauer, joined by Home Federal, the Sybedon defendants, Sickels and the CDS-Grant defendants, moves for dismissal of Lubin's Rule 10b-5 cause of action on grounds that the claim is time-barred. Proskauer advances the novel argument that in light of the Supreme Court's recent decision in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* — U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the court should adopt a *uniform* statute of limitations for Rule 10b-5 claims. In *Malley-Duff,* the Court found that the Clayton Act's four-year statute should apply to civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Proskauer now argues by analogy that a uniform "double-barreled" statute of limitations (*i.e.,* three years from the making of the statements; one year from when they should have been discovered) should be settled upon in Rule 10b-5 cases, for the same reasons that a uniform RICO statute was adopted in *Malley-Duff.* Proskauer finds support for its

---

**5.** Note that because Nationwide Lending was originally named as "Doe # 1," the First Amended Complaint does not make any specific allegations against that defendant. Moreover, because Doe pleading is unauthorized in federal actions, Nationwide Lending is not a proper party to this suit.

argument in the recent concurring opinion of Senior Judge Aldisert (of the Third Circuit, sitting on a Ninth Circuit panel) in *Davis v. Birr, Wilson & Co., Inc.*, 839 F.2d 1369, 1370 (9th Cir.1988) (Aldisert, J., concurring). Judge Aldisert concluded that a uniform statute should be adopted, although he did acknowledge that the Supreme Court has yet to take this position with respect to Rule 10b–5 actions as such.

■ Absent further and authoritative guidance from the Supreme Court or the Ninth Circuit, however, the court declines Proskauer's invitation to adopt a uniform statute of limitations for Rule 10b–5 claims. The court must therefore determine the timeliness of Lubin's claim according to the traditional statute of limitations analysis.

■ Generally, because there is no federal statute of limitations, the court must borrow the limitations period for the state claim which most resembles the federal cause of action. It is well settled in the Ninth Circuit that "[t]he forum state's statute of limitations for general fraud claims determines the limitations period applicable to federal securities claims under § 10(b) of the Securities Exchange Act of 1934...." *Volk, supra*, at 1412; *Semegen v. Weidner*, 780 F.2d 727, 733 (9th Cir.1985). California's statute of limitations for fraud is three years. Cal.Civ.Proc.Code § 338(4) (West 1988); *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 876 (9th Cir.1984), *cert. denied*, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984).

Although state law governs the length of the limitations period, however, a court must look to federal law to determine the time at which the statute begins to run. *Volk*, 816 F.2d at 1412. As the court in *Volk* explained:

> Normally, a statute of limitations period begins to run when an injury occurs, which is usually equivalent to when the cause of action accrues. In the context of fraud, however, the injury and accrual of the cause of action may occur at a time distinct and separate from the commencement of the statute of limitations period.

*Id.* The court then pointed out that fraud causes of action are usually said to accrue when a defendant commits the last overt injurious act. And in securities fraud cases, "the cognizable injury occurs at the time an investor enters, or if he currently owns stock, decides to forego entering a transaction as a result of material misrepresentations." *Id.* The court added that "the statute of limitations is not triggered until the defrauded individual has actual or inquiry notice that a fraudulent misrepresentation has been made." *Id., citing S.E.C. v. Seaboard Corp.*, 677 F.2d at 1309.

■ The statute of limitations for a section 10(b) claim may be tolled by fraudulent concealment in the same way that the statute for a section 12(2) claim may be tolled. The tolling standard for fraud actions in California was summarized in *Salveson v. Western States Bankcard Association*, 525 F.Supp. 566, 584 (N.D.Cal.1981), *aff'd in part and rev'd in part*, 731 F.2d 1423 (9th Cir.1984):

> California law has long been settled that plaintiffs suing for fraud or mistake more than three years after the relevant events must plead and prove (1) their lack of knowledge of the operative facts, (2) the absence of means of obtaining that knowledge (*i.e.*, exercising reasonable diligence, plaintiffs still could not have discovered the facts within three years), and (3) the time and manner of their actual discovery of the facts.

In *Mosesian*, the court noted that the question of when a fraud was discovered—or should have been discovered—is a question of fact. *Mosesian*, 727 F.2d at 877, *citing Seaboard Corp.*, 677 F.2d at 1309. The court went on to state that the question of discovery "may be decided as a matter of law only when 'uncontroverted evidence irrefutably demonstrates plaintiffs discovered or should have discovered the fraudulent conduct.'" *Id., quoting Kramas*, 672 F.2d at 770.

■ Here, Lubin has urged the court to find that defendants did fraudulently conceal their misconduct, so that the statute did not begin to run until the foreclosure by Home Federal surfaced in December

1987. Although the court is presently unwilling to make such a finding of fraudulent concealment, the court does find that Lubin has pleaded fraudulent concealment in a manner sufficient to meet Proskauer's untimeliness allegation. That is, the court now defers ruling on whether Lubin's claims are time-barred. The presence of issues of material fact precludes the court from determining precisely when Lubin knew, or should have known, about the alleged Rule 10b–5 violations. As additional facts become evident, the court may entertain renewed argument on this issue.

#### 2. Failure to Plead with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides, in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." Fed.R. Civ.P. 9(b). In *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987), the Ninth Circuit stated that "pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendants can prepare an adequate answer from the allegations.'" *Quoting Semegen*, 780 F.2d at 735, *quoting Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1977). The *Wool* court went on to point out: "While mere conclusory allegations of fraud are insufficient, statements of the time, place and nature of the alleged fraudulent conduct are sufficient." 818 F.2d at 1439; *see also Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986). Where a fraud consists of omissions, and not affirmative misrepresentations, courts are more lenient with their enforcement of Rule 9(b), and will allow a plaintiff to "find alternative ways to plead the particular circumstances of the fraud." *Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D.Cal.1987). The purpose of Rule 9(b) is to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs. *Semegen*, 780 F.2d at 731.

■ In large and complicated securities fraud actions such as this, courts must be especially attentive to a plaintiff's "dragnet" tactic of indiscriminately grouping all of the individual defendants into one wrongdoing monolith. Such a tactic often fails to take account of the law's separate treatment of primary wrongdoers and secondary wrongdoers. As the court in *Erickson* noted, it is insufficient under Rule 9(b) to "group ... the defendants together without differentiating who might be primarily liable and who might be secondarily liable." 1986–87 Fed.Sec.L.Rep. at ¶ 92,889. Fraud allegations may not rely on blanket references to conduct of "defendants and each of them," but must instead inform each defendant of the conduct which constitutes the alleged violation. *See Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 645 (C.D.Cal.1983).

In *Bruns v. Ledbetter*, 583 F.Supp. 1050 (S.D.Cal.1984), the court addressed a situation similar to that presented by Lubin's First Amended Complaint and dismissed a securities fraud action on Rule 9(b) grounds. The court first noted that the 14 defendants in the case, despite their diverse functions, were treated in the complaint "as a monolithic enterprise whose sole purpose was to separate plaintiffs from their money." 583 F.Supp. at 1051. The court went on to say:

> One does not plead fraud by simply invoking the language of the relevant statutes. A complaint should be long on facts and short on invective. It must set forth:
>
> > (1) the nature of each individual defendant's participation in the fraud, including facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.

583 F.Supp. at 1052, *quoting Goldberg v. Meridor*, 81 F.R.D. 105, 111 (S.D.N.Y. 1979).

■ Upon due consideration, the court finds that Lubin has not pleaded his Rule

10b–5 cause of action with the particularity required by Rule 9(b). Although in paragraphs 91 through 95 of the First Amended Complaint Lubin painstakingly lists the offering documents' alleged misstatements and omissions, he neither attributes these statements to the stating defendant nor differentiates among the defendants' disparate responsibilities for the statements. Every reference in paragraphs 91 through 95, as well as every reference in paragraphs 105 through 113 (the section entitled "SECOND CLAIM FOR RELIEF"), is phrased as "defendants" or "defendants and each of them." The First Amended Complaint thus presents a classic instance of pleading a "monolithic enterprise." As such, it cannot survive this Rule 9(b) challenge. From the blanket allegations of Rule 10b–5 fraud, even when understood in the context of the First Amended Complaint as a whole, it would be impossible for most of the instant defendants to prepare adequate, specific answers.

Furthermore, even though the First Amended Complaint is rich in factual detail in other regards, the factual foundations for its Rule 10b–5 claim are sparse and unsteady. Most of the Rule 10b–5 allegations are phrased in conclusory terms which do little more than track the statute or regulation. Lubin has not explained *how* the facts which he has alleged give rise to a Rule 10b–5 claim. This is especially evident in his almost complete failure to differentiate the defendant's primary and secondary liabilities. Lubin has alleged a grave and far-reaching fraud scheme. This is a matter which cannot be taken lightly; neither may Lubin take his pleading responsibilities lightly.

### 3. Failure to State a Claim for Primary Liability

■ In order to establish primary liability in a Rule 10b–5 action a plaintiff must show: (1) conduct proscribed by the Rule, (2) in connection with, (3) the purchase or sale of a security, (4) which results in harm. As the court explained in *In re American Principals Holdings, Inc. Securities Litigation,* —— F.Supp. ——, M.D.L. 653 (S.D.Cal., July 2, 1987), p. 14, the first of these elements subsumes three factors:

First, the actor must have the requisite mental state. Intentional, knowing or reckless conduct will suffice. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1299 n. 1 (9th Cir.1982). Second, the actor must commit a fraudulent act or course of acts. The scope of Rule 10b–5 would encompass the assertion of untrue statements, the omission of necessary facts, or the operation of a comprehensive scheme to defraud. *Kafton v. Baptist Park Nursing Center, Inc.,* 617 F.Supp. 349, 350 (D.Ariz.1985); *Hudson v. Capital Management International, Inc.,* [1982–83 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 99,222 (August 24, 1982), at 95,902 [available on WESTLAW, 1982 WL 1385]. And third, any assertion of untrue statement or omission must be of "material" facts. In general, a fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision. *Harris v. Union Electric Co.,* 787 F.2d 355, 366 (8th Cir.1986) (citation omitted).

The second element of a claim for primary liability requires "transaction causation" between the defendants' fraudulent acts and the plaintiff's harm. This is a "but for" causation, which implicates both objective and subjective considerations. *Id.* at 15. Objective reliance is established when the plaintiff shows the materiality of the misstatements or omissions, and subjective reliance is established if the plaintiff would not have purchased or sold the security but for the fraud. *Id.* The third and fourth elements ensure that the plaintiff is someone who in fact sustained economic losses through his or her purchase or sale of a security.

Various defendants contend that Lubin has failed to state a claim for a primary violation of Rule 10b–5. Their contentions appertain to two related issues: lack of reliance and absence of a duty.

#### a. *The Reliance Requirement: Fraud on the Market*

The necessity of pleading reliance in a Rule 10b–5 cause of action cannot be ques-

tioned. *See Basic, Inc. v. Levinson,* ——U.S. ——, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). As the Supreme Court observed in *Basic,* "Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Id.*

Because Rule 10b–5 actions often involve an impersonal and indirect relationship between investors and sellers, courts have devised methods of demonstrating reliance which do not require a showing that each individual investor relied upon the alleged misstatements or omissions. Thus in *Basic,* the Supreme Court reaffirmed that where plaintiffs are proceeding under a "fraud-on-the-market" theory of wrongdoing, then reliance may be *presumed. See also Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975).[6] This presumption of reliance makes it difficult to dismiss a market fraud Rule 10b–5 claim for failure to plead reliance.

■ But a strict fraud-on-the-market reliance presumption does not apply where, as here, securities have not been purchased on an impersonal market. That is, the limited partnership interests purchased by Lubin and the other putative class members were not traded on a free, efficient and national securities exchange. Rather, they appear to have been offered in more or less private dealings to a select group of wealthy investors. Because the securities were traded on an inefficient market, any misstatements or omissions by defendants would not have affected the price at which the securities were sold. Therefore, the presumption applied in *Basic* appears to be unavailable in this case.

Acknowledging that his situation is distinguishable from that which typically gives rise to a fraud-on-the-market theory, Lubin proposes that in fact courts recognize several varieties of the theory. Lubin further contends that the variety first articulated in *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), does allow a presumption of reliance in this case. In *Shores,* the court addressed allegations of fraud in connection with the original issuance of revenue bonds by a municipal industrial development board. The plaintiff in *Shores* had argued that the defendant's involvement in the fraud was "so pervasive that without it the issuer would not have issued, the dealer could not have dealt in, and the buyer would not have bought these Bonds, because they would not have been offered on the market at any price." *Id.* at 464 n. 2. In light of this allegedly pervasive involvement, the Fifth Circuit held that the plaintiff could state a claim under Rule 10b–5(1) or 10b–5(3) (but not Rule 10b–5(2)). Reliance was established through a showing that the scheme "was intended to and did bring the Bonds onto the market fraudulently and ... [plaintiff] relied on the integrity of the offerings of the securities market." *Id.* The court set out three elements of its reliance presumption:

(1) the defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers, (2) [plaintiff] reasonably relied on the Bonds' availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud, he suffered a loss.

*Id.* at 469–70; *see also Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136, 144 (M.D.Fla.1987).

Although the Ninth Circuit has never formally adopted the *Shores* analysis, it has implicitly endorsed a similar variation on the strict *Blackie* fraud-on-the-market theory. In *Arthur Young & Co. v. United States District Court,* 549 F.2d 686, 695 (9th Cir.), *cert. denied,* 434 U.S. 829, 98

---

6. The "fraud-on-the-market" theory "is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations." *Basic,* 108 S.Ct. at 988, 989.

S.Ct. 109, 54 L.Ed.2d 88 (1977), the court stated:

> Just as the open market purchaser relies on the integrity of the market and the price of the security traded on the open market to reflect the true value of securities in which he invests, so the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue.

In *Arthur Young,* the partnership interests had been sold pursuant to registration statements and prospectuses filed with the Securities and Exchange Commission. In addition, the standardized statements had been sent or shown to every investor.

Even assuming that either *Shores* or *Arthur Young* is valid law in this circuit, however, the court finds that Lubin has not pleaded facts sufficient to warrant a departure from the strict fraud-on-the-market theory of *Blackie* and *Basic.* The *Shores* reliance presumption appears to be unavailable because Lubin has not pleaded that the limited partnerships were "not entitled to be marketed." Nor, more importantly, has he pleaded reliance "on the [limited partnerships'] availability on the market as an indication of their apparent genuineness." Even under *Shores* an investor must show that he relied to some extent upon either the pricing mechanisms of a securities exchange or the registration procedures of the Securities Exchange Commission. Here, Lubin has not alleged circumstances which show such reliance. The limited partnership which he purchased was not traded on an exchange. In fact, according to Prudential–Bache, the Confidential Private Placement Memorandum prominently declared that the offering price was determined solely by the General Partner, and did not necessarily reflect the value of the property. Nor has Lubin alleged that any exchange commission certified the limited partnerships. Indeed, Prudential–Bache has declared that the offering materials unmistakably revealed that the limited partnerships had *not* been registered with or approved by the Securities Exchange Commission or the Internal Revenue Service. *See* Exhibit 3 to Reply Memorandum of Prudential–Bache. Because Lubin has not shown how he relied upon the "regulatory process," he cannot invoke the *Arthur Young* reliance presumption. Lubin has thus failed to plead sufficiently any of the fraud-on-the-market theories of group reliance.

### b. The Reliance Requirement: Material Omissions

An alternative route to a reliance presumption was charted by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). In *Affiliated Ute,* the Supreme Court held that both reliance and "causation in fact" may be presumed in cases involving "material" omissions. Materiality in the Ninth Circuit is determined through the use of an objective test. *Caravan Mobile Home Sales v. Lehman Bros. Kuhn Loeb,* 769 F.2d 561, 565 (9th Cir.1985). The test is "whether there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision." *Id.; In re Apple Computer Securities Litigation,* 672 F.Supp. 1552, 1559 (N.D.Cal.1987). The test does not require that the investor would have altered his or her behavior in light of the omitted fact; it merely requires that the omitted fact would have assumed actual significance in the investor's deliberations. *Apple Computer,* 672 F.Supp. at 1559, *quoting TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

On its face, the *Affiliated Ute* presumption appears to apply only in cases based upon omissions, and not in cases based upon misrepresentations. The Ninth Circuit has three times reserved the important question of whether to extend *Affiliated Ute* to cases based upon affirmative misrepresentations. *See Kramas,* 672 F.2d at 769 n. 2. The circuit has also declined to specify the extent to which *Affiliated Ute* should apply in cases based upon *both* omissions and misrepresentations ("mixed cases").

Other courts have found that the *Affiliated Ute* presumption is not available in mixed cases involving both omissions and misrepresentations. *See, e.g., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir.1987); *Cavalier Carpets v. Caylor*, 746 F.2d 749 (11th Cir.1984); *Huddleston v. Herman & McLean*, 640 F.2d 534 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Beck v. Cantor, Fitzgerald & Co., Inc.*, 621 F.Supp. 1547, 1556 (N.D.Ill.1985). The courts have reasoned that "[A mixed case] is not a case in which difficulties of proof and reliance require the application of the *Affiliated Ute* presumption." *Huddleston*, 640 F.2d at 548, *quoted in Cavalier*, 746 F.2d at 757.

The court finds the preceding cases to be persuasive. And because this is a mixed case (see ¶¶ 91–95 of the First Amended Complaint), the court holds that Lubin cannot invoke the *Affiliated Ute* presumption of reliance. Because Lubin's pleading of a fraud-on-the-market theory is similarly defective, his Rule 10b–5 claim must be dismissed for failure to plead reliance.

### c. *Primary Liability for Nondisclosures*

Defendants have also moved to dismiss Lubin's Rule 10b–5 cause of action on grounds that Lubin has not stated a claim for primary liability for nondisclosures. As mentioned above, this case arises out of both misstatements and omissions. And primary liability for nondisclosures depends mostly upon the extent to which a defendant was under a *duty* to disclose the allegedly withheld information. In *Chiarella v. United States*, 445 U.S. 222, 230, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980), the Supreme court stated that while "silence in connection with the purchase or sale of securities may operate as a fraud under § 10(b), this liability must be based on a duty to disclose between the parties." Recently, the Ninth Circuit stated firmly: "Rule 10b–5 is violated by nondisclosure only when there is a duty to disclose." *Jett*, 840 F.2d at 1492. Rule 10b–5 liability thus cannot result from a mere failure to

disclose nonpublic market information in market transactions between strangers. *Polinsky v. MCA, Inc.*, 680 F.2d 1286, 1291 (9th Cir.1982).

The Ninth Circuit requires the application of a "flexible duty test" in order to determine the scope of a defendant's duty under section 10(b) and Rule 10b–5. *White v. Abrams*, 495 F.2d 724 (9th Cir.1974); *Ahern v. Gaussoin*, 611 F.Supp. 1465, 1488 (D.Ore.1985). This test is designed to take the circumstances of each case into account in determining whether a defendant owes a duty for purposes of section 10(b) liability. The factors to be considered under the test include:

1. the relationship of the defendant to the plaintiff;
2. the relative accessibility of information to the plaintiff and defendant;
3. the benefit that the defendant derives from its relationship with the plaintiff;
4. the defendant's awareness of the plaintiff's reliance; and
5. the defendant's activity in initiating the securities transaction in question.

*Jett*, 840 F.2d at 1493; *White, supra*, at 735–36; *Wright v. Schock*, 571 F.Supp. 642, 659–660 (N.D.Cal.1983). No single factor of the test is determinative, "and the analysis to be engaged in by the court is a qualitative one in which the various factors must be judged in relation to one another." *Mirotznick v. Sensney, Davis & McCormick*, 658 F.Supp. 932, 937 (W.D.Wash. 1986). In general, "the parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust or confidence in the other." *Jett*, 840 F.2d at 1493.

Several defendants have moved to dismiss the nondisclosure aspect of Lubin's Rule 10b–5 claim on grounds that Lubin has not adequately pleaded a duty.

#### (1) Sickels and the CDS–Grant Defendants

Sickels and the CDS–Grant defendants allege that Lubin has not pleaded a duty to disclose information relating to the

Hotel's renovation. Sickels and the CDS–Grant defendants argue that they owed duties only to the Grant Associates, and not to the limited partners themselves. These duties arose out of the real estate contracts by which Sickels sold the Hotel to the Grant Associates. Sickels points out that Lubin and the other limited partners did not invest in any of the CDS–Grant entities. Rather, they invested in the Grant Associates itself. Therefore, because it was Sybedon, as General Partner and co-issuer, who might have promised to deliver a good investment to Lubin, it was Sybedon who might have owed section 10(b) duties to Lubin.

Without determining the prospective viability of Lubin's duty claim against Sickels and the CDS–Grant defendants—such a determination would be more proper on a motion for summary judgment—the court finds that Lubin has not pleaded facts sufficient to support the finding of a duty. Most importantly, Lubin has not pleaded the particulars of his relationship with Sickels and the CDS–Grant defendants. Lubin has not attempted to show how a party who sells a property is later duty-bound to disclose information about that property to purchasers of interests in the property.

### (2) Laventhol

Similarly, Lubin's duty allegations would not support a finding of Rule 10b–5 nondisclosure liability on the part of Laventhol. Nowhere in the First Amended Complaint does Lubin allege that he had any sort of a relationship with Laventhol. *A fortiori*, he has not alleged what benefit Laventhol derived from that relationship. Nor has he alleged that Laventhol had greater access to relevant investment information at the time the securities were offered. As Lubin has acknowledged, Laventhol's participation in the alleged fraud did not commence until after the initial offering. From all indications, Laventhol in no way initiated the sale of the limited partnerships.

### (3) National Union

For virtually identical reasons, Lubin's Rule 10b–5 nondisclosure claim against National Union must be dismissed. Lubin has not pleaded facts which show a duty on the part of National Union.

### (4) Home Federal

Neither has Lubin pleaded a duty on the part of Home Federal. Again, there are insufficient allegations of how a relationship developed between Home Federal and Lubin. There is, for example, no indication of prior dealing between the two parties. Nor has Lubin shown how Home Federal benefited from a relationship with him. And although Lubin has alleged in a general sense that he relied upon Home Federal's wrongdoing, he has not alleged specific facts which demonstrate that reliance.

### (5) Hill Financial and Nationwide Lending

As a secondary and subsequent lender, Hill Financial is the target of even fewer of Lubin's allegations. The First Amended Complaint does not plead facts which show a relationship between the investors and Hill Financial. Lubin has not pleaded facts which purport to show anything other than routine banking services on the part of Hill Financial. Therefore, the court must dismiss the nondisclosure aspect of Lubin's Rule 10b–5 claim for primary liability against Hill Financial.

### 4. Failure to State a Claim for Secondary Liability

#### a. *Failure to Plead Aider and Abettor Liability*

In order to establish aider and abettor liability, a plaintiff must show: (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong. *Harmsen v. Smith*, 693 F.2d 932 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed. 2d 97 (1983). And although liability as an aider and abettor also requires that a defendant have been under a duty to disclose, "that duty arises from 'knowing assistance of or participation in a fraudulent scheme,' " *Strong v. France*, 474 F.2d 747, 752 (9th Cir.1973), rather than the position of the defendant and the relationship that exists

between the defendant and plaintiff." *Mirotznick, supra,* at 941; *see also Harmsen,* 693 F.2d at 944.

Arguments to dismiss Lubin's aider and abettor claim are raised by the following defendants: 1) Sickels and the CDS–Grant defendants, 2) Laventhol, 3) Proskauer, 4) Home Federal, and 5) Hill Financial and Nationwide Lending.

#### (1) Sickels and the CDS–Grant Defendants

■ Sickels and the CDS–Grant defendants propose that Lubin has not made out a claim for aider and abettor liability because he has not shown that these defendants knew of the primary wrong. Moreover, they say, Lubin has not shown that they substantially assisted in the fraud.

Upon examination, however, the court finds that Lubin has alleged aider and abettor liability on the part of Sickels and the CDS–Grant defendants. There is no question that Lubin has pleaded the existence of an independent primary wrong. In addition, he has pleaded facts which show that Sickels had actual knowledge of the wrong and of his role in furthering it. Lubin has alleged that Sickels spearheaded the syndication scheme, in part as a tactic to limit his own liability. More importantly, Lubin alleges that Sickels, CDS–Grant Inc. and CDS–Grant Association assisted in the preparation of all three of the offering documents. Thus, Lubin has alleged that Sickels was directly involved in misstating, and omitting to state, material facts. For pleading purposes, the combination of initiating the syndication and preparing the offering materials amounts to "substantial participation."

#### (2) Laventhol

■ By contrast, the allegations against Laventhol are not sufficient to state a claim for aider and abettor liability. Paragraph 8 of the First Amended Complaint sets out the relationship between Laventhol and the Grant Associates, and alleges that Laventhol failed to disclose the true value of the Hotel in its securities reports. Paragraph 56 also contends that Laventhol "joined in the conspiracy by preparing false and misleading securities reports to show plaintiffs' interests in U.S. Grant Hotel Associates had assets of $94,996,939.00." ¶ 56.

By pointing out that Laventhol did not become a party to the Hotel's renovation effort until sometime after the limited partnership had been created, however, Lubin has effectively undermined his aiding and abetting claim. Because there is no indication in the First Amended Complaint that Laventhol was in any way responsible for the information contained in the offering materials, Lubin has not stated a claim for aider and abettor liability. He has not alleged that Laventhol knew of the primary fraud or of its role in that fraud. Nor has he shown substantial assistance in the fraud.

#### (3) Proskauer

■ Lubin has stated a claim for aider and abettor liability on the part of Proskauer. In paragraphs 26, 27 and 54 of the First Amended Complaint, Lubin alleges that Proskauer prepared an opinion letter and prospectus for the offering, as well as the Confidential Private Placement Memorandum. Lubin thus alleges that Proskauer knew of the alleged misstatements and omissions, and that it therefore knew of its role in the fraud. Moreover, Lubin charges that because Proskauer's participation in the alleged fraud was direct, the firm substantially assisted in the wrongdoing. Without in any way ruling on the merits of Lubin's claim, the court finds that it has been adequately pleaded.

#### (4) Home Federal

Lubin's allegations against Home Federal do not make out an aiding and abetting claim because they fail to show substantial assistance in the underlying wrong. At most, Lubin has alleged that Home Federal knew of the fraud. But nowhere does Lubin plead facts which show substantial assistance. Therefore, the aider and abettor claim against Home Federal must be dismissed.

#### (5) Hill Financial and Nationwide Lending

Similarly, Lubin has not alleged aider and abettor liability on the part of Hill

Financial. Lubin has not alleged that Hill Financial either had actual knowledge of the wrongdoing or substantially assisted in that wrongdoing.

### b. *Failure to Plead Controlling Person Liability*

The standard for controlling person liability under section 20 of the 1934 Act is identical to the standard for liability under section 15 of the 1933 Act (discussed above). Generally, a plaintiff must show that: "(1) the defendant had actual power or influence over the alleged controlled person, and (2) the defendant was a culpable participant in the alleged illegal activity." *Jett*, 840 F.2d at 1495; *Buhler*, 807 F.2d at 835; 15 U.S.C. § 78t(a). Section 20 of the 1934 Act provides for joint and several liability in the case of controlled wrongs. 15 U.S.C. § 78t(a). Normally, whether a defendant has power or influence over an allegedly controlled person is a question of fact. *Buhler*, 807 F.2d at 835.

In the above discussion of the First Amended Complaint's section 12(2) claim, the court found that Lubin had not stated a claim for controlling person liability on the part of Prudential–Bache Properties, Pannell, Wilrock, Proskauer, National Union, Hill Financial or Nationwide Lending. These findings apply equally to Lubin's claim of controlling person liability under Rule 10b–5 and they are therefore adopted here. As also mentioned above, the court may not dismiss the controlling person claims against the Sybedon defendants, in light of their failure to move for such relief. Thus, the issue of controlling person liability under section 20 need only be addressed with respect to three defendants: 1) Prudential–Bache Securities, 2) Sickels and the CDS–Grant defendants, and 3) Home Federal.

### (1) Prudential–Bache Securities

Lubin has not alleged facts sufficient to show controlling person liability on the part of Prudential–Bache Securities. Although Lubin has alleged that Prudential–Bache Securities played a direct role in the sale of the limited partnerships (and therefore might have been a "culpable participant"), Lubin has not pleaded facts which show "power or influence" over a controlled person. As discussed above, Prudential–Bache Securities might have been a participant in the sale. But thus far there is no indication that Prudential–Bache Securities was also a controlling person.

### (2) Sickels and the CDS–Grant Defendants

Neither has Lubin alleged controlling person liability on the part of Sickels and the CDS–Grant defendants. Again, even assuming that Lubin has pleaded culpable participation, he has not pleaded power or influence over a controlled person. Although Sickels might have devised the syndication, an allegation of this act alone does not suffice to show power or influence.[7]

### (3) Home Federal

Finally, Lubin has not alleged that Home Federal was a controlling person. Paragraph 52 of the First Amended Complaint does state that "[f]rom July 1983 forward, HOME FEDERAL controlled the U.S. Grant Hotel and Christopher Sickels." ¶ 52. Apart from this allegation, however, the First Amended Complaint does not plead circumstances which show that Home Federal was "culpable." Even assuming that through its position as primary lender Home Federal exercised some degree of power and influence over Sickels, Sybedon or any other wrongdoer, and even assuming that Home Federal did participate in the syndication of the limited partnerships, Lubin has not alleged that Home Federal was responsible or blameworthy for the wrongs which have precipitated this lawsuit. Without specific, telling allegations, the court cannot sustain Lubin's controlling person claim against Home Federal.

---

**7.** Lubin has alleged that Sickels "controlled" the Ulysses Management Company, the lessee of the Hotel from the Grant Associates and previously a defendant in this action (before being voluntarily dismissed on March 11, 1988). Lubin has not alleged how the Ulysses Management Company had any part in the underlying wrongs. Bare allegations of control of a non-culpable party do not suffice to make out a claim for controlling person liability under the federal securities laws.

## C. *Third and Fourth Causes of Action: Violations of Sections 12(1) and 15 of the 1933 Securities Act and the California "Blue Sky" Statutes*

Lubin's third cause of action charges all defendants except Laventhol with violations of section 12(1) of the 1933 Act and sections 25501, 25504, 25504.1 and 25504.2 of the California Corporations Code.[8] Lubin alleges that defendants wrongfully failed to register the Grant Associates offering with either the Securities and Exchange Commission or the California Department of Corporations. Lubin further alleges that the offering was not exempt from these registration requirements. Lubin's fourth cause of action is for misrepresentations and omissions in the offer and same of securities, in violation of sections 25501, 25504, and 25504.1 of the Corporations Code.[9] The fourth cause of action is also brought against all defendants except Laventhol.

With multiple joinders, Proskauer moves to dismiss the section 12(1) aspect of Lubin's third cause of action on grounds that it is time-barred. Other defendants move to dismiss Lubin's state law claims as time-barred and for failure to state a claim.

### 1. Section 12(1) Aspect of the Third Cause of Action

The statute of limitations for section 12(1) claims, like the statute of limitations for section 12(2) claims, is set out in section 13 of the 1933 Act. Section 13 provides, in part, that an action under section 12(1) shall not be maintained "unless brought within one year after the violations upon which it is based." In no event, states the section, "shall any such action [under section 12(1)] be brought to enforce a liability created ... more than three years after the security was bona fide offered to the public...." 15 U.S.C. § 77m.

Before applying this statute, the court must first determine whether it is absolute. The Ninth Circuit has ruled that the three-year outer limit of the statutory period is absolute. *Seaboard Corp.*, 677 F.2d at 1308. The Ninth Circuit apparently has not decided, however, whether the one-year inner limit of the period is similarly absolute. In *Rexplore, supra*, the court set out persuasive reasoning for holding that the one-year aspect is absolute:

> In the opinion of this Court the statutory language compels the conclusion that the equitable tolling doctrine was not intended to apply to section 12(1) claims. The statute specifically provides for accrual upon discovery for section 12(2) claims, but does not include similar language as to section 12(1) claims. A reasonable construction of this language is that Congress intended the one year [sic] limitations period of section 12(1) claims to be absolute. Additionally, since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities.

671 F.Supp. at 687. *See also Koehler v. Pulvers*, 606 F.Supp. 164, 167 (S.D.Cal. 1985). This court adopts the reasoning of the *Rexplore* court and finds that the one-year inner limit is absolute and not subject to equitable tolling.

Next, the court must determine when the period began to run. Lubin argues that the statute did not begin to run in January of 1985, but instead began to run sometime around June 15, 1987. This was the time at which Lubin discontinued making payments on his partnership share. Lubin bases his argument upon the Seventh Circuit's opinion in *Goodman v. Epstein*, 582 F.2d 388 (7th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). In *Goodman*, the court found that "when an investment deci-

---

**8.** Although Lubin has designated the third cause of action as arising under section 25501, it appears that the cause properly arises under section 25503, which assigns liability for the failure to register securities. Section 25501, which enables enforcement of section 25401's prohibition of fraud, appears to be the basis for the fourth cause of action. In other words, Lubin has apparently switched the section numbers in the headings for the causes of action.

**9.** See note 8.

sion remained to be made at the time of a call for a capital contribution by a Limited Partner ..., the contribution by each Limited Partner in response to the call constituted the separate 'purchase' of a security and, therefore, any material misrepresentations or omissions at that time were 'in connection with the purchase or sale of a security,' as required by § 10(b) and Rule 10b–5." *Id.* at 414. *See also Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 813 (9th Cir.1981) (implying, without analysis, that section 10(b) liability might extend to the time of the last payment; also indicating that when a transaction is finalized is a question of fact).

There are at least two major problems with Lubin's reliance upon *Goodman.* First, evident from the quotation above, is that the *Goodman* court was addressing the statute of limitations for section 10(b) claims, not section 12(1) claims. Section 12(1) expressly applies to failures to register securities, not to misstatements or omissions which work a fraud upon investors. Therefore, whether or not misstatements were made at the time of a subsequent payment is beside the point. Second, the court finds that the only relevant "investment decision" by Lubin and the other limited partners was the decision to enter into the contract to purchase the limited partnerships. *See, e.g., Hill v. Equitable Bank,* 655 F.Supp. 631, 638 (D.Del.1987). Later payments were not investment decisions. A finding that section 13's one-year statute does not begin to run until a plaintiff has made his or her final installment payment would effectively abrogate the strict interpretation of this statute adopted from cases such as *Rexplore* and *Koehler.*

The Grant Associates limited partnerships were offered beginning in January 1985, and Lubin purchased his interest on or about January 17. The time of the alleged section 12(1) violation is therefore no later than January 17. Because Lubin did not file this action until December 23, 1987, his section 12(1) claim falls outside the one-year statute of limitations. The section 12(1) claim must be dismissed with prejudice.

## 2. Timeliness of State Causes of Action

Three statutes of limitations are applicable to the third and fourth causes of action. Section 25506 of the Corporations Code applies to the instant claims under sections 25501, 25504 and 25504.1. It provides:

No action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 insofar as they related to those sections) unless brought before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire.

Cal.Corp.Code § 25506 (West 1988). Section 25506.1 applies to claims brought under section 25504.2 and provides:

No action shall be maintained to enforce any liability created under Section 25504.2 unless brought within one year after the discovery should have been made in the exercise of reasonable diligence. In no event shall any such action be brought more than three years after the act or transaction constituting the violation.

Cal.Corp.Code § 25506.1 (West 1988). Finally, section 25507(a) applies to claims brought under section 25503; it provides:

No action shall be maintained to enforce any liability created under Section 25503 (or Section 25504 or Section 25504.1 insofar as they relate to that section) unless brought before the expiration of two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting such violation, whichever shall first expire.

Cal.Corp.Code § 25507 (West 1988).

Addressing the statutes in reverse order, Lubin's section 25503 claim must be dismissed as time-barred. Section 25503 is the California equivalent of section 12(1) of the 1933 Act, and, like its federal counterpart (section 13), section 25507's two-year statute of limitations has been found to be absolute and not subject to equitable toll-

ing. *See Koehler,* 606 F.Supp. at 169. Lubin purchased his limited partnership two years and eleven months after the offering should have been registered, and he therefore cannot now maintain a claim under section 25503.

The remainder of Lubin's Blue Sky claims cannot be dismissed on statute of limitations grounds at this time. The outer limits of the statutory periods prescribed by sections 25506 and 25506.1 are four years and three years, respectively, and Lubin apparently did file his complaint within these periods. But it is impossible, without further factfinding, to ascertain whether Lubin filed his claims within one year of the time when he discovered, or in the exercise of reasonable diligence should have discovered, the wrongdoing. Thus, just as the court deferred ruling on the timeliness of Lubin's federal securities claims, so must the court defer ruling on whether these Blue Sky claims are barred by section 25506 or 25506.1.

### 3. Sufficiency of the Blue Sky Fraud Claims

Section 25501 of the California Corporations Code provides that "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him." Cal.Corp.Code § 25501 (West 1988). Section 25501 thus provides the cause of action for a violation of section 25401, which provides:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of a written communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal.Corp.Code § 25401 (West 1988). Section 25504 creates joint and several liability for controlling persons of those who are liable under section 25501 or 25503. Section 25504.1 creates liability for those who, with intent to deceive or defraud, materially assist in a violation of section 25110 or

25401 (*i.e.* those who are liable under section 25503 or 25501). Again the liability is joint and several. Section 25504.2 adds joint and several liability for accountants, appraisers, and other professionals who have consented to be named in, have been named in, and have provided material for, an offering prospectus.

The Ninth Circuit has held that liability under section 25401 is limited to actual sellers, so that strict privity is required. *Seaboard Corp.,* 677 F.2d at 1296; *see also In re Diasonics Securities Litigation,* 599 F.Supp. 447, 459 (N.D.Cal.1984). Because the causes of action provided for in sections 25501, 25504, 25504.1 and 25504.2 are by their terms derived from section 25401, a failure to show strict privity will defeat these derivative claims. *Diasonics,* 599 F.Supp. at 459.

Only Proskauer and National Union have directly challenged the sufficiency of Lubin's Blue Sky claims, and the court now finds that most of the claims against those two defendants must be dismissed. Neither may be held liable under section 25501 because neither was in privity with the limited partners. Nor, as discussed above, did either Proskauer or National Union control any person who might be liable under section 25501 or 25503. Lubin has not pleaded material assistance with intent to deceive or defraud, and therefore has not sustained his section 25504.1 claim. Only Lubin's section 25504.2 claim against Proskauer can survive this motion. Lubin has alleged facts showing that Proskauer provided an offering document upon which the investors relied.

### D. *Fifth and Sixth Causes of Action: Fraud and Deceit and Negligent Misrepresentation*

Lubin's fifth cause of action is for fraud and deceit pursuant to California Civil Code sections 1710(1) and 1710(3), and his sixth cause of action is for negligence, misrepresentations and omissions pursuant to Civil Code section 1710(3). Upon motions from all defendants, the court finds that these causes of action have not been pleaded with the particularity required under

**1454**

Rule 9(b) of the Federal Rules of Civil Procedure. As mentioned in the above discussion of Lubin's Rule 10b–5 claim, the First Amended Complaint in no way distinguishes the roles of the defendants in the alleged fraud. Nor does it specify the content or timing of the allegedly fraudulent misrepresentations. Lubin's fifth and sixth causes of action are stated in such conclusory terms that it truly would be impossible for the defendants to prepare meaningful answers. The fifth and sixth causes of action therefore must be dismissed. Lubin may amend these causes of action, but in doing so he must disclose facts which demonstrate, with particularity, circumstances giving rise to the liability of each defendant.

E. *Seventh Cause of Action: Breach of Fiduciary Duty*

 In his seventh cause of action, Lubin alleges that all defendants "breached their fiduciary duties ... by misrepresenting material facts; failing to disclose material facts; diverting plaintiff's funds to their own personal use; and by failing to act in good faith and with fair dealing." ¶ 149. What is more, according to Lubin, each of the defendants aided and abetted its codefendants' breaches of fiduciary duty.

It is axiomatic that before a plaintiff may state a claim for breach of a fiduciary duty, that plaintiff must show a fiduciary relationship with the defendant against whom the claim is brought. And before a defendant may be charged with a fiduciary obligation, "he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 221, 197 Cal.Rptr. 783, 673 P.2d 660 (1983). In order to state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show both active participation in the breach and that the aider and abettor reaped the benefit of the breach. *Heckman v. Ahmanson*, 168 Cal. App.3d 119, 127, 214 Cal.Rptr. 177 (1985).

Thus, "a person not himself a fiduciary may be liable for breach of a fiduciary duty as a result of colluding with a disloyal fiduciary." *Certified Grocers of California, Ltd. v. San Gabriel Valley Bank*, 150 Cal.App.3d 281, 289, 197 Cal.Rptr. 710 (1983).

Defendants Prudential–Bache, Pannell, Proskauer, National Union, Home Federal, Hill Financial and Nationwide Lending have moved for dismissal of Lubin's seventh cause of action for failure to state a claim upon which relief may be granted. The court finds their motions to be well-taken. Without analyzing the various relationships between Lubin and the defendants, and without determining which of those relationships might support fiduciary obligations, the court simply finds that the pleading of Lubin's seventh cause of action is wholly inadequate to make out a claim for either breach of fiduciary duty or aiding and abetting a breach of fiduciary duty. As set out in the First Amended Complaint, the seventh claim consists of six paragraphs, four of which serve either to introduce the claim or to aver damages. The two paragraphs which do discuss the substance of the allegations do so in general and conclusory terms. Rather than indicate the specific characteristics of defendants' fiduciary obligations, the paragraphs merely restate the underlying allegations of securities fraud. Again, Lubin has chosen to proceed against the defendants as a monolith. This tactic is especially inadequate when pleading a breach of fiduciary duty, because of both the disparity of the defendants' roles in the alleged fraud and the corresponding disparity of relationships between Lubin and those defendants.

F. *Eighth Through Eleventh Causes of Action: Professional Malpractice*

In his eighth through eleventh causes of action, Lubin has alleged professional malpractice on the part of Proskauer, Pannell, Laventhol and Wilrock. Proskauer and

Pannell now move to dismiss Lubin's claims.[10]

### 1. *Attorney Malpractice: Proskauer*

█ Proskauer first argues that the eighth cause of action must be dismissed because it is time-barred. California Code of Civil Procedure section 340.6 provides that all actions against an attorney arising out of his or her performance of professional services, except actions for actual fraud, are governed by a one-year statute of limitations. The one-year limitations period does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the facts constituting the malpractice. As discussed above, the court cannot now determine at what point Lubin knew, or should have known, of the underlying wrong. And absent knowledge of the underlying wrong, Lubin would not have known of Proskauer's alleged negligence. The court cannot find at this time that Lubin's attorney malpractice claim is untimely.

Proskauer also argues that the claim must be dismissed because it did not owe Lubin and the other investors a duty of due care. Generally, an attorney does not owe a duty of care to a non-client. Exceptions to this rule have been carved out for situations in which the non-client is an intended beneficiary of the attorney's services and in which it is "reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others." *Fox v. Pollack*, 181 Cal.App.3d 954, 960, 226 Cal.Rptr. 532 (1986). The California Supreme Court has explained:

> The determination whether in a specific case the dfendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suf-

fered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958), *quoted in Goodman v. Kennedy*, 18 Cal.3d 335, 342–43, 134 Cal.Rptr. 375, 556 P.2d 737 (1976). In *Goodman*, the court declined to find a duty of due care running from the defendant attorney to the plaintiff investors. The court emphasized that the attorney's advice was never communicated to the investors, so that the investors could not have relied upon that advice. The court distinguished *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976), in which the attorney had given his client a written opinion with the intention that it be transmitted to and relied upon by non-clients.

Not surprisingly, Proskauer urges the court to follow *Goodman*, while Lubin would opt for *Roberts*. For purposes of this motion to dismiss, the court finds that *Roberts* is more apposite and that Lubin has has stated a claim for attorney malpractice. Paragraph 155 of the First Amended Complaint alleges that Proskauer indirectly conveyed to Lubin and the other investors the recommendation that registration and qualification of the limited partnerships were not necessary. Paragraph 160 further charges Proskauer with knowledge that its advice was being transmitted to prospective limited partners, who would, understandably, rely upon that advice. The court is aware that Proskauer has challenged the truth of these somewhat vague and elusive allegations. Nevertheless, on this motion to dismiss the court must accept all of Lubin's material allegations as true, and may not dismiss his claim unless it appears that Lubin would not be entitled to relief under any state of facts that he could prove. Applying the *Biakanja* balancing test in light of *Roberts*, the court finds that Lubin has come forward with allegations which would support both a duty of due care and a breach thereof.

**10.** Laventhol has not addressed Lubin's tenth cause of action as such, and Wilrock has not moved to dismiss the eleventh cause of action for any reason.

### 2. Accountant Malpractice: Pannell

■ Lubin's ninth cause of action is for professional negligence by Pannell in connection with the offer and sale of the limited partnerships. Lubin alleges that Pannell "prepared projections and financial statements knowing said information would be communicated to plaintiff and that plaintiff would rely thereon." ¶ 166. Lubin further alleges that he and the other limited partners did rely upon Pannell's projections and statements. ¶ 172. Lubin charges that Pannell induced him to continue to make payments on his investment, and that in this and the other wrongs Pannell intended to deceive the investors. Pannell's service was reckless and negligent, and it failed to meet the standard required of accountants.

In *International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal. App.3d 806, 223 Cal.Rptr. 218 (1986), the California Court of Appeal for the first time held that a certified public accountant owes a duty of care to reasonably foreseeable plaintiffs who rely on alleged negligently prepared and issued unqualified audited financial statements. The court thus departed from the long-standing rule that, absent privity, an accountant could not be held liable for a breach of duty. *See Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). The court specifically found that the privity standard "is no longer viable," and stated: "It is our view tort liability should be delimited only by the concept of foreseeability...." 177 Cal. App.3d at 819, 821, 223 Cal.Rptr. 218.

Because *International Mortgage* arose out of the distribution of an unqualified audit opinion in the public, Pannell argues that the case is distinguishable. Accordng to Pannell, "An audit of an entity based on current books and records and the expression of opinions as to its financial condition is quite clearly an activity of a higher order than that which [Pannell] performed here...." Memorandum in Support of Motion to Dismiss, p. 23. Pannell states that it merely conducted a market study and a forecast review, and that this is insufficient to support a duty owing to plaintiffs.

The court disagrees with Pannell's analysis of *International Mortgage* and declines to give that case such a narrow reading. While it is true both that the defendant in *International Mortgage* had performed extensive services for its client and that the fruits of those services were disclosed directly to the public, the court finds no indication in *International Mortgage* that its holding was meant to be confined to the situation which it was addressing. Instead, the court in *International Mortgage* carefully surveyed the demise of the privity rule, and it then clearly established foreseeability as the determinant for an accountant's duty of due care. Because Pannell certainly should have foreseen the investors' reliance upon its study and review, and because the First Amended Complaint alleges as much, the court finds that Lubin has properly stated a claim for accountant malpractice.

### G. Twelfth Through Sixteenth Causes of Action: Miscellaneous State Claims

Lubin's twelfth cause of action—for breach of contract—must be dismissed for failure to state a claim. As Pannell has pointed out, Lubin has not alleged what specific contracts were breached. Moreover, he has not pleaded facts which show a breach. He has simply posited the breach, in a most conclusory fashion.

The primary challenge to the thirteenth through sixteenth causes of action is that, as pendent claims, they must fall if the federal securities claims fall. Because the court has sustained parts of Lubin's federal claims, however, the court declines to dismiss these pendent claims.

### H. Dismissal of the Doe Defendants

■ The Ninth Circuit has repeatedly held that a suit naming Doe defendants may not be maintained in federal court. *Bryant v. Ford Motor Co.*, 832 F.2d 1080, 1092 (9th Cir.1987) (Kozinski, J., dissenting). There is no provision in the federal statutes or the Federal Rules of Civil Procedure for the use of fictitious parties. *Fifty Associates v. Prudential Insurance Co. of America*, 446 F.2d 1187, 1191 (9th

Cir.1970). Accordingly, the Does must be stricken from this case.

### I. *Sanctions*

Home Federal and Sickels and the CDS–Grant defendants have moved for sanctions under Rule 11, and they specifically request that the award be made against Lubin's *counsel*. They allege that counsel for Lubin did not adequately investigate this case before he drafted the complaint. This purported failure has caused all of the defendants to spend vast amounts of money on bringing these motions. Both moving defendants seek approximately $10,000.

The court finds the requests for sanctions to be inappropriate. In order to award sanctions on the grounds urged by the moving defendants, the court would need to ascertain both how much investigation was warranted and whether Lubin's counsel satisfied that obligation. Aside from being hopelessly speculative, this task has almost nothing to do with the court's proper role in this litigation. Lubin has filed a complex case, and the roles played by the various defendants might well remain hidden for an extended period of time. Lapses of detail or depth in the First Amended Complaint provide no cause for sanctioning Lubin's counsel.

### II.

### MOTION TO STRIKE

Pursuant to Federal Rule of Civil Procedure 12(f), Pannell moves to strike allegedly "redundant or immaterial matter" from the First Amended Complaint, including all or part of the following paragraphs: 3, 49, 50, 51, 54, 56, 57, 64, 68–74, 84, 86–88, 92, 93, 95–107, 111, 118, 124, 139, 149, 166, 190, 206. In particular, Pannell objects to Lubin's request for punitive damages, as well as to aspects of his claims for state-law fraud and breach of fiduciary duty.

Pannell has presented an elaborate constitutional challenge to Lubin's $100 million punitive damages request. Pannell contends that the request violates the "cruel and unusual punishment" and "excessive bail" provisions of the Eighth Amendment to the United States Constitution, as well as the "due process" clauses of both the national and California Constitutions. Pannell also argues that Lubin has not made a sufficient showing of the malice required to warrant punitive damages. Finally, Pannell contends that Lubin has violated the "best evidence rule" by not submitting certain original documents.

The court finds that Pannell's contentions are not well-taken. The "best evidence" objection is inappropriate at this time, because Lubin is not required, in his complaint, to provide the "best" evidentiary record for his allegations. Nor is Lubin required to make a complete showing of malice at this time. Finally, although it is an intriguing notion that an award of punitive damages for securities fraud would violate the Fifth and Eighth Amendments, the court finds that Pannell has not supported his argument with sufficient legal authority. The motion to strike must be denied.

### III.

### MOTION FOR CLASS CERTIFICATION

Lubin moves to certify a class of plaintiffs which would include all investors who purchased Class A limited partnership interests issued by the California limited partnership U.S. Grant Hotel Associates during the period from December 27, 1984 to December 27, 1987 (excluding all defendants and their agents or employees).

Motions for class certification proceed under Rule 23 of the Federal Rules of Civil Procedure. Ninth Circuit decisions generally favor a liberal use of class actions to enforce federal securities laws. *See Arthur Young, supra; Blackie, supra.* In *Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D.Cal.1985), the court observed that this liberal policy is "based upon the belief that class actions are particularly suited to serving as policing weapons against corporate wrongdoing."

In order to qualify for class certification, Lubin must show that his putative class meets all four requirements of Rule 23(a) and at least one of the three requirements

of Rule 23(b). Lubin bears the burden of proof, and he may show either that the Rule 23 prerequisites have been met or that discovery is likely to produce a substantiation of his class allegations. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). Although Lubin need not prove his case on the merits, the court "does require sufficient information to form a reasonable judgment." *Blackie, supra*, at 901 n. 17. In addition to the express requirements of Rule 23, Lubin must also show that a class exists and that he is a member of that class.

## A. *Rule 23(a)*

Section (a) of Rule 23 contains that first set of requirements for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Lubin vigorously asserts that these requirements are satisfied.

### 1. Numerosity/Impracticability of Joinder

▬ Rule 23(a)(1) requires that the proposed class be so numerous that joinder is impracticable. Precise enumeration of the class is not required, and there is no ready rule for how many members must be anticipated. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1762 (1986). In addition to the size of the class, some of the factors to be considered in deciding the numerosity issue include: 1) the geographical diversity of the plaintiffs; 2) the nature of the action; 3) the size of the individual claims; and 4) whether it would be impossible to obtain personal jurisdiction over some of the members of the class. All of these factors must be taken into account, and their weighing is a matter for the court's discretion. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir.1981).

▬ Lubin contends that the class of wronged investors numbers over 300, and this appears to be sufficient to satisfy the numerosity aspect of this requirement. *See Ponce v. Housing Authority of County of Tulare*, 389 F.Supp. 635 (E.D.Cal. 1975) (356 members sufficient); *Gonzales v. Sheely*, 96 F.Supp. 1004 (D.Ariz.1951) (class of 300 sufficient). The putative class members reside throughout the United States and are not familiar with each other. And, as mentioned above, securities fraud by nature lends itself well to class actions. Therefore, the numerosity factor appears to be satisfied.

The only countervailing consideration is that, because each limited partner invested a substantial amount of money in the securities, each might be inclined to join this case as an individually named plaintiff. This is especially true given the high degree of each investor's financial sophistication. The Grant Associates offering prospectus made it quite clear that the limited partnership would be very risky. It required investors to have both a substantial net worth ("at least $500,000 exclusive of home, furniture and automobiles") and a substantial taxable income (tax bracket of "at least 49%"). Indeed, 85% of the eventual limited partners represented that they each had a net worth of over $1,000,000. Therefore, the putative class members are not "small fry" who would be helpless without the group strength of a plaintiff class. They are sophisticated investors who might be capable—in terms of knowledge and financial resources—of prosecuting their fraud claims on their own.

Notwithstanding the somewhat atypical character of the class, however, the court finds on balance that Lubin has shown sufficient numerosity and impracticability of joinder to meet the first requirement of Rule 23(a).

### 2. Commonality

Rule 23(a)(2) requires the presence of "questions of law or fact common to the

class." In securities fraud actions, the commonality requirement is established when the alleged misrepresentations constituted a "common course of conduct." *Blackie, supra,* at 902; *In re Victor Technology Securities Litigation,* 102 F.R.D. 53, 56 (N.D.Cal.1984). Note, however, that this case does not present the typical "open market" securities scenario.

As the court recognized in *National Association of Radiation Survivors v. Walters,* 111 F.R.D. 595, 600 (N.D.Cal. 1986), Rule 23(a)(2) is stated in the disjunctive, so that common questions of either fact *or* law will suffice to meet the commonality requirement. The court in *Radiation Survivors* explained: "Rule 23(a)(2) does not require that all members of the class be identically situated; the requirement is met so long as there are substantial questions of law or fact common to all." *Id.; see also Harris v. Palm Springs Alpine Estates,* 329 F.2d 909, 914 (9th Cir. 1964).

Proskauer has proposed several reasons for denying certification on commonality grounds:

### a. *Conflict of Interest*

First, Proskauer argues that serious conflicts of interest between Lubin and the putative class members should preclude class certification. The alleged conflict of interest arise out of the fact that "the relief requested [by Lubin] would jeopardize the tax interests of all investors." Memorandum in Opposition to Motion for Class Certification, p. 10. If Lubin's suit forces the rescission of the limited partnership agreements, then the limited partners would suffer the recapture of substantial Investment Tax Credits which were taken for the Hotel's rehabilitation expenses. Each full limited partnership unit has already had a tax credit of $43,000. Proskauer supposes that these tax credits were a significant consideration for investors and they ought not to be endangered without a full hearing from all investors. The presence of this potential conflict of interest should thus forestall certification. *See Mechigian v. Art Capital Corp.,* 612 F.Supp. 1421, 1433 (S.D.N.Y.1985).

Proskauer's argument is not persuasive. In the recent case of *Roberts v. Heim,* 670 F.Supp. 1466, 1491 (N.D.Cal.1987), the court rejected a similar objection to class certification (although there it was couched as an "adequacy" inquiry, and not a "commonality" inquiry). In *Roberts,* defendants asserted that a conflict of interest existed between the proposed representative plaintiff and absent class members who had undertaken proceedings in the United States Tax Court to determine the validity of tax deductions taken on partnership interests. The court found this "conflict of interest" assertion to be unmeritorious. The court noted that any class conflicts could be ameliorated through the "opt out" mechanism of Rule 23(c)(2) and that if too many class members exercised their opt-out right, the court could decertify the class at that time. 670 F.Supp. at 1491.

The court finds the *Roberts* approach to be correct. If conflicts arise, they may be mitigated through Rule 23(c)(2)'s opt-out mechanism or through decertification.

### b. *Proof of Reliance*

Second, Proskauer and Prudential–Bache argue that the commonality requirement is not satisfied because individual issues will predominate throughout the proof of Rule 10b–5 reliance. As is discussed above, Proskauer contends that Lubin and the putative class cannot rely on a market-fraud presumption of reliance. Nor could group reliance be premised upon the theory articulated in *Affiliated Ute,* in which the Court upheld the presumption for cases involving omissions. Therefore, individual reliance must be shown, and in the course of proving such reliance individual issues will overwhelm common issues.

If this were an action arising out of a fraud on the market, then Proskauer's argument would be unavailing. The court in *Roberts, supra,* stated clearly that where a complaint is based on misrepresentations and omissions affecting the sale of securities on a market, "courts presume reliance at the class certification stage." 670 F.Supp. at 1493; *see also Blackie,* 524 F.2d at 905–06. Furthermore, it would appear

from the Ninth Circuit's discussion in *Blackie* that, for class certification purposes, reliance issues are taken to be common in cases giving rise to an *Affiliated Ute* presumption.

Here, however, the court has found that the First Amended Complaint did not adequately plead group reliance under either a market-fraud theory or an *Affiliated Ute* theory. In fact, it is not clear whether Lubin will be able to sustain any sort of reliance presumption. Nevertheless, the court finds that Lubin has sufficiently shown issues of fact or law to be common to the claims of all putative class members.

This issue—whether Rule 23(a)(2) commonality may be found absent a presumption of group reliance—appears to be one which, if previously settled, must be reexamined in light of *Basic*. The Supreme Court recognized the issue in *Basic*, but it is unclear from the opinion whether the Court was stating a dictum or simply reviewing arguments previously presented to the district court. *See Basic*, 108 S.Ct. at 989. Certainly the Court did not hold that without a presumption of reliance common questions cannot predominate. Nor does this court find that such a conclusion must be inferred from *Basic*. In fact, the court finds that such a conclusion ought not to be inferred from *Basic*, because it would in effect amend the clear language of Rule 23(a)(2) and transform the "commonality" requirement into an "identity" requirement. Here, Lubin has alleged a common course of wrongdoing, which he has restricted to fairly narrow circumstances (*i.e.*, those relating to the sale of Grant Associates limited partnerships). He has alleged that each putative class member is similarly situated (as a limited partner), and that the role of each defendant is identical vis-a-vis each investor. He has alleged that each investor relief upon precisely the same misrepresentations and omissions, and that each has suffered similar damages. Given such a discrete, identifiable fraud scheme, it would defy common sense to find that class certification is defeated by the possibility of individual questions appertaining to one of the elements of one of the case's causes of action. Even

assuming that individual reliance must be shown, this case would still encompass a multitude of common issues.

### c. State Statutes of Limitations

Third, Proskauer argues that common issues cannot be found to predominate in the face of individual issues of compliance with the various state statutes of limitations. Again, however, the court declines to adopt such a restrictive application of the commonality requirement. Even if the statutes of limitations from other states are called into play, those statutes would still be applied to common fraud allegations. Rule 23(a)(2) simply requires commonality of questions of fact or law; it does not require uniform procedural devices for resolving those claims.

### d. California Corporations Code Issues

Fourth, Proskauer argues that common questions do not predominate because Lubin's California Blue Sky claims are not available to the non-California investors. The court finds this argument to be meritorious, so that if a class is eventually certified, that class must be divided into subclasses of California and non-California plaintiffs for purposes of this issue.

Section 25008(b) of the Corporations Code restricts the availability of California Blue Sky claims. The section provides the following jurisdictional prerequisite:

> An offer to sell or buy is made in this state when the offer either originates from this state or is directed by the *offeror* to this state and received at the place to which it is directed. An offer to buy or to sell is accepted in this state when acceptance is communicated to the offeror in this state....

Cal.Corp.Code § 25008(b) (West 1988). Thus, "the jurisdictional prerequisites of § 25008(b) are satisfied when offers of securities are made from California to persons outside the state, or when acceptance of the offer is directed to a person within California." *Roberts*, 670 F.Supp. at 1495. Here, it appears that even though the Grant Associates was expressly created as a "California limited partnership," the securities at issue were offered from New

York. And, because the substantial number of non–California investors presumably were not present in California when they purchased their interests, the non–California putative class members may not avail themselves of the California Blue Sky laws. *Id.; see also In re Activision Securities Litigation,* 621 F.Supp. 415, 431 (N.D.Cal. 1985).

Except for purposes of the Blue Sky claims, the court thus finds that the commonality requirement has been satisfied. Similar questions of fact and law—questions of misrepresentation, material omissions, damages, conspiracy, aiding and abetting, and the like—are common to the claims of all of the putative class members. Because the *raison d'etre* for the class is the similar act of purchasing the limited partnerships, and because the purchases were occasioned by identical offering materials, the common questions will predominate in this case. In fact, the commonality of issues in this case appears to be even stronger than that in most open market fraud cases, because the alleged wrongs here were committed in a uniform manner as against all of the investors.

### 3. Typicality

 Rule 23(a)(3) requires the interests of the named representatives to be typical of the interests of the other prospective class members. In *Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D.Cal.1986), this court quoted *Newburg on Class Actions,* for an overview of the typicality requirement:

> Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.

*See also Weinberger v. Jackson,* 102 F.R.D. 839, 844 (N.D.Cal.1984). In *Schwartz, supra,* the court explained:

> A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. The test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

108 F.R.D. at 282. As was the case with the commonality requirement, typicality does not require that the representative's claims be identical to those of the putative class members. *Weinberger v. Thornton,* 114 F.R.D. at 603. Similarity of legal theory is the crucial determinant: "Factual differences do not defeat certification in securities actions where the claims arise from the same legal theory." *Schwartz,* 108 F.R.D. at 282.

 Here, notwithstanding defendants' assertions that Lubin is atypical because he did not read portions of the offering materials (see the discussion of adequacy of representation, below), the court finds that Lubin has satisfied the typicality requirement of Rule 23(a)(3). Lubin's claims are typical because they arise out of the same event or course of conduct that would give rise to the claims of other investors. And, inasmuch as is possible, his claims rest upon the same legal theories that would underlie the claims of other investors.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the representative class members fairly and adequately represent the interests of the class. It is axiomatic that the court must carefully scrutinize the adequacy of representation in all class actions. *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975). Generally, this final requirement of Rule 23(a) is understood to call for two showings: (1) that the class representative will prosecute the action vigorously and will not have interests which are antagonistic to those of other class members, and (2) that the class counsel is qualified

and experienced. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *In re Unioil Securities Litigation*, 107 F.R.D. 615, 621–22 (C.D.Cal.1985). Several defendants have objected to certification on grounds that either Lubin or his counsel should be found to be an inadequate representative.

#### a. *Lubin*

Proskauer characterizes Lubin as "entirely unfit for the job of class representative." Proskauer's Memorandum in Opposition to Motion for Class Certification, p. 4. This characterization is premised upon a deposition conducted on April 26, 1988, during which Lubin testified that he had never read or seen either the original complaint or the amended complaint, that he did not even recognize the names of many of the defendants, that he had never seen or read the prospectus, that he does not understand how much he has invested in the limited partnership, that he misunderstands the nature of the complaint's fraud allegations, that he is not willing to fund the costs of the suit (if necessary), and that he has never discussed the tax consequences of this suit with any of the prospective class members. *See* Exhibit A to Opposition of Prudential–Bache to Motion for Class Certification, pp. 71–78.

Generally, where a proposed class representative demonstrates a "familiarity with [the action's] outlines," he or she will be deemed to be adequate. *See Diasonics*, 599 F.Supp. at 453. Where a proposed representative demonstrates "an alarming unfamiliarity with the suit," however, courts have refused to certify a class in that person's name. *Koenig v. Benson*, 117 F.R.D. 330, 336 (E.D.N.Y.1987). Here, the court finds that Lubin's unfamiliarity with the outlines of his suit is somewhat "alarming," so that the court cannot certify the proposed class in his name. Lubin's

deposition disclosed an inadequate knowledge of the circumstances underlying this suit, and it would be improper for the court to entrust Lubin with the burden of representing his fellow limited partners.[11]

#### b. *Class Counsel*

Defendants also contend that the proposed class counsel—the law offices of Michael J. Aguirre [12] and the law offices of Reniche & Kraus—are inadequate. Defendants charge that Aguirre, the lead counsel, will not be able to discharge this case's many obligations, because he will be absent from this district for approximately one year beginning in July 1988. He has enrolled at Harvard's John F. Kennedy School of Government and will be attending classes full time.

The court has serious reservations about certifying a class whose primary attorney will be attending classes full time approximately three thousand miles from this district. These reservations are especially significant where the class action is as complex and important as the instant case. Therefore, the court now defers its ruling on this issue pending a fuller hearing on the adequacy of the associated counsel. This hearing will take place on September 26, 1988. At that time, the court will determine whether the intervenors and their counsel satisfy the requirements of Rule 23(a)(4).

### B. *Rule 23(b)*

As mentioned above, in order to move successfully for class certification, a representative plaintiff must also meet one of the three requirements of Rule 23(b). Lubin has chosen to proceed under subsection (3) of Rule 23(b), which provides that an action may be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual

---

**11.** Because the court will grant the motions for intervention that have been brought by other limited partners (see *infra*), and because the court is deferring its determination on the adequacy of Lubin's counsel (also *infra*), the court will entertain argument on the adequacy of the intervenors as representatives at the next motions hearing date, September 26, 1988.

**12.** Renamed "Aguirre and Meyer," effective June 1, 1988.

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance of Common Issues

For the reasons explained in the above discussion of the "commonality" and "typicality" requirements, the court finds that common issues will predominate in this action.

### 2. Superiority of Class Action

Despite Proskauer's suggestion that in this case the (wealthy) putative class members could proceed individually, the court finds that a class action will provide the most fair and efficient adjudication of this case. In the event that unanticipated problems should arise, the court may decertify the class.

### C. *Other Factors*

Finally, the court finds that a class is identifiable and that Lubin is a member of that class. The proposed class includes all persons who invested in the Grant Associates between December 27, 1984 and December 27, 1987. Because he purchased a limited partnership on January 17, 1985, Lubin is a member of that class.

### IV.

### MOTION FOR INTERVENTION

■ Three separate groups of proposed plaintiffs have moved to intervene in this action. The proposed complaints in intervention are brought on behalf of the following groups:

1) Sidney and Dorothy B. Friedlaender; Marie K. Mero (as Trustee of the Marie K. Mero Trust); Simon S. Indianer (as Trustee of the Simon S. Indianer Revocable Inter Vivos Trust);

2) Robert W. Luppi; Edward and Gloria Graham;

3) William M. Bethea, Jr.; Arthur D. Indianer; Margaret M. Warne; Oscar E.

Edwards; David M. and Dorothy J. Scisorek; and Edward L. and Linda L. Lilly.

All of the proposed intervenors are purchasers of Class A Grant Associates limited partnerships. They move to intervene for the express purpose of being designated as representative plaintiffs.

Motions for permissive intervention proceed under Federal Rule of Civil Procedure 24(b), which provides, in part:

Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its disdiscretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). The decision whether to allow intervention rests within the court's sound discretion. *See Montgomery v. Rumsfeld,* 572 F.2d 250 (9th Cir.1978).

The court now finds that the motions for intervention are timely and meritorious and that the proposed intervention will not cause undue delay. The three groups of intervenors listed above are therefore granted permission to join this action as proposed class representatives. Of course, in light of the court's rulings on the motions to dismiss, there is no point to filing the proposed complaints in intervention (which are virtual copies of Lubin's First Amended Complaint). Instead, the court will accept a Second Amended Complaint, with appropriate alterations to accommodate the intervenors' claims.[13] Plaintiffs have 45 days to file the Second Amended Complaint.

### CONCLUSIONS

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby concludes as follows:

---

**13.** As mentioned above, the California Blue Sky claims are subject to special jurisdictional prerequisites which might preclude non-California plaintiffs from seeking relief under those statutes. If certified, the class will be subdivided for purpose of the Blue Sky claims.

I. The first cause of action is DISMISSED WITHOUT PREJUDICE as to defendants Prudential–Bache Properties, Pannell, Wilrock, Proskauer, National Union, and Hill Financial.

II. The second cause of action is DISMISSED WITHOUT PREJUDICE, in its entirety, for the reasons set forth above.

III. The section 12(1) claim of the third cause of action is DISMISSED WITH PREJUDICE as time-barred. The California Corporations Code section 25503 claim is also DISMISSED WITH PREJUDICE as time-barred. National Union's motion to dismiss all of the California Blue Sky claims for failure to state a claim is GRANTED. Proskauer's similar motion is GRANTED as to all causes of action except that which arises under section 25504.2 of the Corporations Code. Dismissal of the Blue Sky claims is WITHOUT PREJUDICE.

IV. The fifth and sixth causes of action are DISMISSED WITHOUT PREJUDICE for failure to plead with particularity.

V. The seventh cause of action is DISMISSED WITHOUT PREJUDICE as to Prudential–Bache, Pannell, Proskauer, National Union, Home Federal and Hill Financial.

VI. The motions of Proskauer and Pannell to dismiss the eighth and ninth causes of action (respectively) for failure to state a claim are DENIED.

VII. The twelfth cause of action is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

VIII. Pennell's motion to strike is DENIED.

IX. The court defers its ruling on the motion for class certification, in order to permit a fuller hearing on the issue of adequacy of representation. If adequacy is shown, then the class will be certified as described above.

X. The motion for intervention is GRANTED.